## Pugh v. City of Catlettsburg, et al.

(Decided May 4, 1926.)

## Appeal from Boyd Circuit Court.

1. Automobiles—Railroads—Neither City nor Railroad Held Liable for Injury Caused by Automobile Collision with Pier of Railroad's Bridge Over Street, Authorized by City and Constructed in Approved Manner (Kentucky Statutes, Section 768).—Neither city nor railroad held liable for injuries caused by automobile collision with pier of railway's bridge over street, authorized by city under Kentucky Statutes, section 768, to secure proper approach to river bridge, and constructed in approved manner as to afford ample space for public travel.

2. Municipal Corporations—City Held to Fulfill Duty to Light Railroad Bridge Over Street by Placing Arc Lights at Nearby Intersections.—City held to have fulfilled duty to light overhead railroad bridge over street sufficiently for any one in reasonable use of highway to see it by placing 1,200 candle power arc lights at nearby street intersections so low that one standing at one intersection could see light globe at the other; line of vision being under viaduct.

3. Automobiles—City Held Not Liable for Injury at Sufficiently Lighted Railroad Bridge Over Street Used by Motorist Blinded by Lights of Another Car (Kentucky Statutes, Section 768).—City held not liable for injury at sufficiently lighted railroad bridge over street, which was authorized under Kentucky Statutes, section 768, to motorist who was blinded by lights of another car, since it was not required to anticipate result of act which rendered its lighting nugatory.

4. Railroads—Railroad Held Not Required to Light Piers of Bridge Over Street where City did Not Require it (Kentucky Statutes, Section 768).—Railroad held not required to light piers of bridge built over street, built by authority of city under Kentucky Statutes, section 768, without requirement that they be lighted.

5. Automobiles—Railroads—Failure by City and Railroad to Place Lights on Bridge Over Street Held Not Proximate Cause of Injury to Motorist Colliding with Pier when Blinded by Lights of Another Car.—Failure by city and railroad to place lights on railroad bridge over street held not proximate cause of injury to motorist who ran into pier of such bridge when blinded by lights of another car.

S. S. WILLIS and A. R. JOHNSON for appellant.

R. S. DINKLE and V. A. DINKLE for city of Catlettsburg.

BROWNING & REED for Chesapeake and Ohio Railway Company.

Opinion of the Court by Judge McCandless—Affirming.

Catlett B. Pugh sued the Chesapeake & Ohio Railway Company and the city of Catlettsburg to recover damages for personal injuries and the destruction of his automobile occasioned by a collision between the automobile and an iron pier supporting the overhead tracks of the railway company where they cross Oakland avenue in that city. At the conclusion of all the evidence a directed verdict was returned in favor of the defendants and plaintiff appeals.

Oakland avenue runs east and west, intersecting with Plum and Mound streets. Between these intersections it is crossed at an acute angle by the tracks of the railway, upon an overhead bridge. This is supported by twin iron piers fifteen inches square resting on a concrete foundation about four feet in diameter, the distance from one set of piers to another, and the corresponding length of the bridge spans being 35 feet. The street is about sixty feet in width, and after excluding sidewalks the paved surface is thirty feet in width, but owing to the angle of the intersection, the distance crossed by the bridge is much longer than the width of the street. This situation has been met by placing one pair of the piers in the center of the street and the corresponding piers beyond the curbing, leaving the paved surface of the street on each side of the pedestals approximately thirteen feet to the outer curb, one side being used for the east bound and the other for the west bound travel. No lights are attached to the piers, but there is an arc light of 1,200 candle power at the center of each street intersection, the distance between the two being about 438 feet; the one at Plum street is 153 feet from the viaduct. These lights hang eighteen feet from the ground and a person standing at the Plum street intersection may see the light globe at the Mound street intersection, the line of vision being beneath the viaduct, which is thirteen feet in height.

On the evening of July 24, 1923, appellant, in company with three others, was going east on Oakland avenue in his own car, which was driven by his son, an experienced chauffeur, and travelling at the rate of 12 or 15 miles per hour. Neither of the parties had travelled this street before, nor knew of this viaduct. At the Plum street intersection they encountered a car coming into

Oakland avenue from the south and, turned to the left to pass it, continuing east near the center of the street, but, as they testify, to the right of the center line. As they passed this car they observed a high powered car with glaring headlights approaching them from the east. The driver of plaintiff's car dimmed his headlights, but was so blinded by the light of the other that he could not see, as he, testifies, more than five feet in front of him. He did not observe the bridge pier in the center of the street, and as the other car passed, the left wheel of his car collided with the pier, throwing the occupants out, severely injuring appellant, and practically destroying his machine.

It is first urged that as it is the duty of the city to construct and maintain its streets in a reasonably safe condition for ordinary travel, that the construction and the maintenance of the piers in the center of the street, obstructed such use and created a danger to the travelling public, rendering both the city and the railway company liable for injuries caused by that obstruction, it being alleged in the petition, and not denied, that the city authorized such maintenance and construction.

In this respect, sec. 768, Ky. Statutes, authorizes a railway company "to construct its road upon or across any . . . highway, street, lane or alley . . . and in case the road is constructed upon any public street or alley, the same shall be upon such terms and conditions as shall be agreed upon between the corporation and the authorities of any city in which the same may be."

The city council is thus given power to place conditions upon the use of the streets by the railway and to determine the sufficiency of the type and plan of construction; and if constructed and maintained in accordance therewith neither the city nor the railway will be liable in an action of negligence for an injury arising therefrom, unless the plan adopted is manifesly unsafe or dangerous. In Teager v. City of Flemingsburg, 109 Ky. 746, we said:

> "But when the plan is one that many prudent men might approve; or where it would be so doubtful upon the facts whether the street as planned or ordered by the city governing board was dangerous or unsafe or not that different minds might entertain different opinions with respect thereto—the benefit of the doubt should be given the city, and it should not be held liable. . . .

"The determination of the necessity and the plan should be left to the discretion of the governing or legislative body of the city, subject to control in cases of such manifest error or mistake as would indicate a failure to consider, or a purpose to misconstruct the work."

And again in Clay City v. Abner, 82 S. W. 278:

"This instruction is open to the objection above alluded to, as well as the further criticism that it seems to substitute the judgment of the jury as to what would be a fit and proper improvement for the town for that of the town council. We understand the rule to be that it is for the town council to determine whether a public way shall be improved at all, and if it is, the manner and extent of it. They are selected particularly with reference to their fitness and interest in such matters. Unless the plan that they adopted is one so obviously dangerous as would show a failure to consider or a purpose to misconstruct the work, the judgment of the governing body of the town as to the plan is conclusive. The town is not liable in damages for accidents that may occur on the highway because the very best plan, or even a better one in view of the jury was not adopted. A municipality is in no sense a guarantor of the safety of the traveller upon its highways. The corporate authority is only bound to use reasonable skill and diligence in making the streets and sidewalks safe and convenient for traveling."

See also Carroll's Admr. v. City of Louisville, 117 Ky. 758; Town of Elsmere v. Tanner, 158 Ky. 681; Breckman v. City of Covington, 143 Ky. 444; McCourt v. City of Covington, 143 Ky. 848; Gee v. City of Hopkinsville, 154 Ky. 263; Ward v. Salt Lake City, 151 Pac. 212; Waters v. City of Omaha, 107 N. W. 1007; City of Elyria v. Meachem, 148 N. E. 689.

One of the greatest problems in urban traffic is to avoid congestion and to eliminate dangerous crossings at grade and immense sums are expended in constructing under passes and overhead grades at such places. Here it was necessary for the railway company to raise its tracks in order to secure the proper grade approaching its bridge over the Big Sandy river, and from the standpoint of safety for the travelling public an overhead

bridge was desirable. The intersection was at an acute
angle which required a long span with heavy girders,
perhaps reducing the height of the trestle or the placing
of piers in the center of the street. This matter was en-
trusted to the sound discretion of the city council, and
as the plan adopted afforded ample space for public
travel, and is a type of construction similar to that in use
in cities of this state and elsewhere, we cannot say that
it was manifestly unsafe, hence its construction does not
constitute a public nuisance.

Second. It is urged, however, that both appellees
were negligent in not having the piers barricaded or
lighted. In this respect it may be said that having
erected this structure in the street it was the duty of the
city to light the premises sufficiently for it to be seen and
avoided by anyone in the reasonable use of the highway,
but it appears that this was done by the arc lights at the
street intersections, it being shown that these were suffi-
ciently low for a person standing on one intersection to
see the light globe at the other as well as the viaduct
itself, it also being proven without any direct contradic-
tion that these lamps furnish reasonably sufficient light
under the viaduct for it and the piers to be seen by per-
sons using the street at that point. Nor is this contra-
dicted by the circumstance that appellant's driver was
unable to see the pier before the collision, as he admits
that he was so blinded by the glare of the approaching
headlight that he could not see over five feet in front of
him. Certainly he could not under such circumstances
determine the sufficiency of the street light at that place
for ordinary travel. This seems to be the test of the
city's liability. McDonald v. Covington Bridge Co., 107
S. W. 726; Louisville Bridge Co. v. Iring, 180 Ky. 729;
Gee's Admr. v. City of Hopkinsville, 154 Ky. 263.

The city could not reasonably foresee that someone
would violate the law at this place and render its light-
ing nugatory, and was not required to anticipate the
result of such unlawful act. If instead of running into
the pier, appellant's driver under the glare of the ap-
proaching lights of the machine had run off the street or
against the curb, no one would contend that the city was
liable; and when the right of the city to place the pier in
the street is established, the same principle applies to it.
The above conclusions apply with equal if not greater
force in favor of the railway company. Its tracks do not
cross at grade and require no lighting. The plan of street

construction was authorized by the city without requiring the piers to be lighted, although that condition could have been annexed. If the city is not negligent in failing to place an additional light on the piers the railway company is not.

But if it should be assumed that appellees were under a duty to place lights on the piers and failed in this duty, such omission could hardly have caused the injury. It is extremely doubtful if under the circumstances the driver could have seen a light on the pier, if there had been such, as he was facing a headlight so powerful and glaring that the lights of his own machine were overpowered and he was practically blinded. This unlawful excess of light temporarily destroyed his vision and clearly appears to have been the proximate cause of the injury. Under such circumstances it is a matter of pure speculation as to what aid an additional light or barricade on the pier would have afforded, and clearly the court was justified in giving the directed verdict on the ground that the injury was not the proximate result of any negligence upon the part of defendants.

Wherefore, percieving no error, the judgment is affirmed.