## NELLIE P. MURPHY v. GREAT NORTHERN RAILWAY COMPANY.[1]

May 19, 1933.

No. 29,195.

[1]Reported in 248 N. W. 715.

■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■  ■

A. L. Janes and J. H. Mulally, for appellant.

Gannon, Strizich & Kleffman, for respondent.

DIBELL, Justice.

Action by the plaintiff to recover for personal injuries sustained when an auto in which she was riding, driven by her husband, on state highway No. 35 in Itasca county, came in contact with the center pier of defendant's railway bridge which spanned the highway. The negligence alleged was that the defendant failed to maintain the bridge in proper condition. In substance it was that it failed to have an effective reflector on the center pier. There was a verdict of $12,500 for the plaintiff. The defendant appeals from the order denying its alternative motion for judgment notwithstanding or a new trial.

■ The bridge was over trunk highway No. 35 and was known as bridge 17.1. It was constructed by the defendant in the summer and fall of 1921 in accordance with plans and specifications which provided for two openings, each 14 feet wide, with a center pier.

On November 25, 1931, about six o'clock in the evening, the plaintiff, with her husband and two children, was riding in a Hupmobile touring car in an easterly direction over the highway towards Hibbing. The husband was driving. It was very dark. It was foggy in low places. The mist had frozen. The pavement was slippery. At a point 200 feet from bridge 17.1 the highway curves to the left, and from that point there is a four per cent down grade to the bridge. The travel conditions were bad. They were made worse by the center pier and by the weather conditions. The danger was increased by the curve and the grade.

The car was in good condition and had standard lights which shone 200 feet ahead and diffused rays 45 degrees. The plaintiff's husband was familiar with the highway. He had been under the bridge 10 or 12 times, sometimes in the nighttime but more often in the daytime. He knew there was a center pier. He may not have

had the fact in mind. He was traveling to the right of the center line at 25 to 30 miles an hour. This was quite fast enough, considering the curve and grade, the condition of the highway, and the darkness. He did not see the bridge until he came within 40 or, 50 feet of it. He put on his brakes. His car skidded into the center pier, and as a result of the accident the plaintiff was severely injured. The evidence would justify a finding that the reflector on the center pier did not work, although there was evidence quite the other way, and the jury could find that there was negligence in not having it in working condition.

If the defendant was charged with the duty of keeping a reflector on the center pier, the evidence justifies a finding of negligence and does not require a finding of contributory negligence in the plaintiff's husband. We pass as unimportant to this case the contention of the defendant that the use of the reflector adopted by the highway department was in the nature of an engineering choice, the judgment of experts, of which no complaint can be made.

It has long been the law that a railroad company owes the common law duty to provide an overhead or underground crossing when reasonably necessary for public travel upon a highway. 5 Dunnell, Minn. Dig. (2 ed. & Supp.) §§ 8120, 8121, and cases cited. The requirement is in the interest of convenience and public safety.

By art. 16, § 1, of the constitution, adopted in 1920, it is provided:

"There is hereby created and established a trunk highway system, which shall be located, constructed, reconstructed, improved and forever maintained as public highways, by the state of Minnesota."

Immediately upon the adoption of the amendment legislation followed. 1 Mason Minn. St. 1927, § 2549, provides in part:

"All trunk highways shall be located, constructed, improved and maintained by the state."

1 Mason Minn. St. 1927, § 2546, is as follows:

"Whenever any railroad company shall hereafter construct a bridge over a public highway, the same shall be constructed so as to

leave a clear opening for the highway at least twenty-eight (28) feet wide and at least fourteen (14) feet clear space from the surface of the highway to the bottom of the bridge; provided, that two openings, each at least fourteen (14) feet wide, shall be sufficient if approved by the commissioner of highways."

1 Mason Minn. St. 1927, § 2547, is as follows:

"Any bridge hereafter constructed on any public highway over the tracks of any railroad, shall be at least eighteen (18) feet wide and the approaches thereto shall be at least twenty-four (24) feet wide and the grade of such approach shall not exceed five (5) feet rise in a hundred (100) feet. Such bridge shall leave a clear space above the railroad rails of. at least 21 feet measured vertically; provided, however, that when local conditions preclude compliance with the foregoing requirements, such requirements may be modified by the commissioner of highways upon plans approved by him."

1 Mason Minn. St. 1927, § 2558, is as follows:

"Electric transmission, telephone or telegraph lines, pole lines, railways, ditches, sewers, water, heat or gas mains, flumes or other structures, which under the laws of this state or the ordinance of any village or city may be constructed, placed or maintained across or along any trunk highway or the roadway thereof, by any person, persons, corporation or any subdivision of the state, may be so maintained or hereafter constructed only in accordance with such regulations as may be prescribed by the commissioner of highways, who shall have power to prescribe and enforce reasonable rules and regulations with reference to the placing and maintaining along, across or in any such trunk highway any of the utilities hereinbefore set forth; provided, however, that nothing herein shall restrict the actions of public authorities in extraordinary emergencies."

By L. 1927, p. 584, c. 412, § 56, 1 Mason Minn. St. 1927, § 2720-56, it is provided that "the commissioner is hereby authorized to establish a standard of highway signs and signals."

In January, 1929, after a considerable period of experimenting, the department adopted a "Manual of Standard Signs and Signals," which refers to center piers as follows [p. 10]:

"Where piers occur in the middle of the highway, such as are frequently found at railroad undercrossings, the center pier should be painted and striped diagonally, black and yellow with eight inch stripes. The side piers should be painted plain yellow. The trunk highway marker may be shown on the side piers and a reflector or light signal may be placed in front of the center pier. The end piers of bridges should be painted plain yellow."

Paragraph three of the complaint alleges and the answer admits:

"That at a point approximately three miles east of the said village of Calumet, Minnesota, the defendant's said line of railway crosses said public highway No. 35 by means of a so-called trestle or overhead bridge, and said public highway has for many years last past and does now extend in a general easterly and westerly direction under said bridge at said point and place."

The court charged the jury:

"You are instructed, as a matter of law, that said trestle, including said row of wooden pillars, along the center of the highway, was so constructed according to the laws of Minnesota and it was not negligently constructed, and the defendant railway company cannot be held responsible in this case for the injuries which plaintiff received arising solely from the fact that there was constructed by it a center pier in said highway as was done. Plaintiff also claims that after said trestle was constructed it was maintained by the defendant in a negligent condition; that is, that the center pillars were not properly guarded by lights or signs or warnings so that those who travel on the highway would be adequately warned of the existence of said center pillars in said highway within such reasonable time before they reached the same that they could take proper precautions to protect themselves from colliding with said pillars or otherwise being injured by their presence in the highway."

The court further instructed that it was the defendant's duty to see to it "that the trestle pillars were maintained in a reasonably safe condition for public travel along the highway; that is to say, in such a condition as a person of ordinary prudence and caution would maintain them under such circumstances as might reasonably be anticipated might exist when travelers were traversing the highways." We do not understand that there is now any charge that the bridge was not properly constructed. We come to the vital question whether it was the duty of the railroad company to maintain the reflector on the pier. The plaintiff claims that it was;. the defendant claims that the duty rested on the highway department.

The bridge was constructed in accordance with the provisions of 1 Mason Minn. St. 1927, § 2546, and was approved by the commissioner of the highway department. At the foot of the center pier was a concrete island 48 to 52 inches wide constructed by the department when it paved the highway. Aside from encroachment of the island, the width of the highway was in excess of 28 feet, and there is no complaint that there was not a compliance with the statute.

The highway department adopted standard signs and signals for use over the state. Among them were reflectors or lights for the center piers of overhead bridges. Diagonal stripes of black and yellow were painted on the center pier, and the side piers of the bridges were painted yellow. It used what was called an "Aga-Hex" reflector. Such a reflector was on the center pier of bridge 17.1 at the time of the accident, November 25, 1931. At the time of the trial 75 per cent of the reflectors used in the state for overhead bridges were of this type. This reflector received the rays from the lights of an oncoming automobile and reflected them so that the driver received warning of the presence of a bridge with a center pier.

The constitution and statute indicate that it was the intention that the state should maintain the highway, and its approaches where it went underneath a railroad bridge, in respect of lights and

warnings, and use proper safety devices; and it was intended that the system over the state should be a uniform system and that the commissioner of highways should control signs and warnings. Thus in Automatic S. A. Co. v. Babcock, 166 Minn. 416, 420, 208 N. W. 132, 133, involving the placing of an automobile signal in a trunk highway passing through St. Paul, the court said:

"It is clear, from a reading of the statute in connection with article 16, that it was the purpose, so far as practicable, to provide for a trunk highway system covering the entire state, the design, construction and maintenance, including supervision, to be as nearly uniform as feasibility may allow. To that end the design, detailed location, construction and maintenance were placed under one management. The 70 odd lines or routes were made into one state trunk highway and placed under one management. It is manifest that by the phrase 'to improve and maintain such trunk highway,' as used in the statute, was meant and intended to give the same officer or tribunal, having charge of the construction and maintenance, the general supervision, upkeep and regulation of the traveled portion of the system throughout its entire length. The evident purpose was to establish and maintain, as nearly as practicable, a uniform system so as to better acquaint and familiarize the traveling public with the system and thereby render traffic less hazardous. To allow the governing bodies of the many cities and villages through which the lines pass to interfere with the commissioner's duties within their respective municipalities would destroy uniformity and result in constant turmoil.

"The phrase 'to reconstruct, improve and maintain such trunk highway,' as used in the statute, means to build and keep in proper condition for public traffic, not a part of such trunk highway but the whole of it, that is, to keep the roadway in repair and open to public traffic and, in so far as may be, free from dangerous obstruction."

And further remarking the court said [166 Minn. 422]:

"The statute, section 2554, subdivision 4, relieves cities and villages from 'responsibilities and duties' on trunk highways within

their municipality. They no longer have any authority to expend public money thereon for any purpose. This statute in no way interferes with the police power vested in cities or villages. The general power of the city or village to regulate and control traffic, except in so far as it is limited by the highway act, is not questioned. It may regulate travel upon trunk highways by ordinances not in conflict with the state law, but that power cannot be extended so as to encroach upon the authority given the commission by the statute. We are of the opinion and hold that it was the purpose of the highway act to vest in the commissioner of highways power to regulate the erection and maintenance of danger signals and warning devices and signs, as well as the general supervision and maintenance of such highway."

The cases are cited by counsel in detail, but few are directly useful. The case of Crist v. M. St. P. & S. S. M. Ry. Co. 162 Minn. 1, 202 N. W. 57, is not controlling. It involved the duty of the maintenance of the approaches to a bridge over railway tracks. It was held cast upon the railway company, where the dirt and gravel had worn away so as to make a square jump of six inches onto the bridge proper. The case of Aubin v. Duluth St. Ry. Co. 169 Minn. 342, 211 N. W. 580, involved the construction and maintenance of trolley poles on a street passing over a railway viaduct in the city. The case of Comstock v. G. N. Ry. Co. 157 Minn. 345, 196 N. W. 177, involved a failure to provide a wheel or rail guard on a street over railway tracks under circumstances reasonably requiring it. The case of Fitzgerald v. Village of Bovey, 174 Minn. 450, 219 N. W. 774, involved an avenue of the village which was a part of a trunk highway and is not of particular value here. In Lind v. G. N. Ry. Co. 171 Minn. 486, 214 N. W. 763, it was held that an accident occurring by an auto coming in contact with the center pier was not proximately caused by defects therein, the claim of the plaintiff being that the width between the center and side piers was not that required by 1 Mason Minn. St. 1927, § 2546. Upon a considerable search we do not find a case in point under other highway acts.

We hold that when the railroad company constructed a proper overhead bridge in accordance with plans made by the highway de-

partment and the structure was approved, the duty of furnishing lights or a reflector did not rest upon the defendant. The highway department undertook, as the statute intended it should, the furnishing of warnings to travelers, including those appertaining to overhead bridges. The injury did not come to the plaintiff because of a bad bridge, for the state authorized it. The most that can be said is that it came because of the lack of a proper reflector. It may be that center pier bridges involve such elements of danger that they should not be permitted; but the statute specifically authorizes them. Under the constitution and the statutes the highway department undertook to do what it did do, and the railway company did all that was required when it built the bridge. We are not to be understood as holding that there might not be defects in the bridge which would render the railway company liable to an injured traveler. The evidence does not justify a finding that it was liable because of an improperly maintained reflector.

Order reversed and case remanded with directions to enter judgment for the defendant notwithstanding the verdict.

*STONE, Justice* (concurring).

What is said in subdivision two of the opinion, in all of which I concur, disposes of the case. No other ground of decision is needed. Hence I beg leave to decline the expression of any opinion on the subject matter of the first subdivision.