# CARL E. WILLOUGHBY v. DULUTH, MISSABE & IRON RANGE RAILWAY COMPANY AND ANOTHER.[1]

July 1, 1949.

No. 34,791.

[1]Reported in 38 N. W. (2d) 186.

See, Robinson v. D. M. & I. R. Ry. Co. 229 Minn. 155, 38 N. W. (2d) 183.

*James J. Courtney & Son,* for appellant.

*W. O. Bissonett,* for respondent Oliver Iron Mining Company.

LORING, CHIEF JUSTICE.

This is an appeal from a judgment entered against plaintiff in consequence of an order for a directed verdict in a personal injury action arising out of a collision on April 4, 1947, with the same center pier which was involved in Robinson v. D. M. & I. R. Ry. Co. 229 Minn. 155, 38 N. W. (2d) 183, filed herewith. The Robinson collision occurred March 12, 1947. In that case, there was evidence that defendant's acts obliterated the warning signs to such an extent as to justify the jury in finding the obliteration to be a contributing cause of the accident. In the case at bar, there was no evidence whatever of such obliteration of the diagonally striped board and the "Keep To Right" reflector sign. Those signs were in good condition at the time this plaintiff, while a passenger in an automobile, was injured in a collision with the pier. Reference is made to the Robinson opinion for the facts in regard to the construction of the bridge, its ownership, maintenance, and immediate environment.

Plaintiff here rests his case, so far as negligence is concerned, on the fact that four small, round reflectors imbedded in the right side of the prow of the concrete base were covered with dirt and did not reflect light. He charges defendant mining company with responsibility for the ineffective condition of these small reflectors and predicates negligence thereon.

The difficulty with plaintiff's case is that there is no evidence in the record that these reflectors were or had been in functioning condition for ten years prior to his injury. True, the testimony shows that they were covered with dirt and that some of it was of a brownish color, but the maintenance men of the state highway department, which is charged by law with care of the reflectors, testified that these reflectors had been abandoned as warning signs

by that department and that no reflection from them had been observed for ten years. There is no evidence that, had there been no dirt on the reflectors, they were in condition to reflect car lights. Considering the presence of the warning by the diagonally striped board and the reflector sign, we regard the trial court's action in directing a verdict for defendant Oliver Iron Mining Company, owner of the overpass, as justified by the record. There was undisputed evidence that plaintiff's driver was blinded by the headlights of oncoming traffic. The night was hazy and misty. These circumstances appear to have been the proximate causes of the injury. Pugh v. City of Catlettsburg, 214 Ky. 312, 317, 283 S. W. 89, 92, 46 A. L. R. 939. Other cases are cited in the note.[2]

■ We cannot agree with plaintiff's contention that the Oliver company was unlawfully maintaining the overpass because the company was performing a private function rather than the functions of a railroad devoted to a public purpose. M. S. A. 160.04[3] gives the commissioner of highways authority to approve overhead bridges "hereafter" constructed with a center pier. Plaintiff would have us read this section so that the word "railroad" is confined to common carriers. The argument that the commissioner had no power to grant a private corporation the right to maintain an overhead bridge for private purposes is wholly unjustified by the authorities. In this statute, the words "railroad company" are used without restriction of their meaning to common carriers. The public

[2] Cf. Cooke v. Boston & Lowell R. Corp. 133 Mass. 185; Barrett v. Southern Pac. Co. 207 Cal. 154, 277 P. 481.

[3] "When any railroad company shall hereafter construct or substantially reconstruct a bridge over a public highway the same shall be constructed so as to leave a clear opening for the highway at least 28 feet wide and at least 14 feet clear space from the surface of the highway to the bottom of the bridge; provided, that the requirement for the clear opening for the highway may be modified by the commissioner of highways upon plans approved by him."

This section was enacted by L. 1921, c. 323, § 5, over 12 years after the overpass in question was built in 1908. The commissioner of highways approved in writing the construction of a paved highway on either side of the center pier, according to stipulated facts.

was interested in the dimensions of the physical structure erected over the highway, not in whether it was put there by a common carrier. The whole of M. S. A. c. 160 relates to roads and details of construction in reference thereto. A railway may be operated for either private or public purposes or a combination of purposes. There was no evidence that defendant mining company was committing a nuisance or was a trespasser on the highway.

In Town of Kinghurst v. International Lbr. Co. 174 Minn. 305, 307, 219 N. W. 172, 173, an action to restrain a lumber company from initially extending a private logging railroad across certain highways and to enjoin the county board from issuing a permit to the lumber company to construct such a railroad, the district court sustained demurrers to the answers, and on appeal, this court said, in reversing:

"(b) We are dealing with a corporation which owns the fee on both sides of the highways. It owns its roadbed or right of way. Its tracks are upon its own ground. Its extensions will be on its own ground. Does the presence of the public easement for travel on the highways prevent the owner from using his own lands so long as he does not obstruct or interfere with the travel thereon? We think not. The company is the fee owner on both sides of the roads. The existence of the public easement in the highways cannot deprive the fee owner of the right to cross such highways, which divide his lands, as his convenience and necessity may require. Village of Mankato v. Willard, 13 Minn. 1 (13), 97 Am. D. 208; Newell v. M. L. & M. Ry. Co. 35 Minn. 112, 27 N. W. 839, 59 Am. R. 303. The fee owner has the right to use his fee in the highway for such private purpose as he may desire unless and until such use unreasonably interferes with the public travel thereon. 29 C. J. 548, 549."[4]

---

[4]The court also said in the Town of Kinghurst case (174 Minn. 310, 219 N. W. 174):

"* * * we must assume that no statutory obstruction will be created or maintained in violation of [G. S. 1923] § 2615 [M. S. A. 160.34], much less a public nuisance within § 10241. We do not recognize the ordinary grade commercial railroad crossings upon our highways as obstructions or nuisances. They are not."

164

Obviously, the mining company might lawfully erect the center pier under permission from the commissioner of highways.

Affirmed.

