GLENNA ROBINSON v. DULUTH, MISSABE & IRON RANGE
RAILWAY COMPANY AND ANOTHER.
EUGENE W. ROBINSON v. SAME.
SHIRLEY JONES v. SAME.
OLIVER IRON MINING COMPANY, APPELLANT.[1]

July 1, 1949.

Nos. 34,732, 34,733, 34,734.

[1]Reported in 38 N. W. (2d) 183.

W. O. *Bissonett,* for appellant.
*Ray H. Beardsley* and *A. W. Spellacy,* for respondents.

LORING, CHIEF JUSTICE.

There are before us three appeals by defendant, Oliver Iron Mining Company, from orders denying its alternative motions for judgment notwithstanding verdicts for plaintiffs or for new trials in three cases arising out of the collision of an automobile with the center pier of an overpass railroad bridge maintained by defendant at Bovey on the Mesabi Range in this state. Two of the cases were brought by the guardians *ad litem* of minor girls who, as passengers, were injured in the collision, and the third by the special administrator of a girl passenger who was killed in the same collision. The cases were tried together below and are consolidated on appeal to this court. All three cases present the same question here.

Defendant is engaged in mining and washing iron ore in the vicinity of Bovey and Coleraine, Minnesota. Originally, the Duluth, Missabe & Iron Range Railroad Company was joined as defendant in the suits, but shortly after the trial began the actions were dismissed as to the railroad company. The mining company will herein be referred to as the defendant. In connection with its mining and washing operations, defendant participated in the construction of, and later acquired, the overhead bridge or viaduct here involved,

which was erected over the road now known as U. S. Highway No. 169. This highway was first established as a county road in 1904; in 1908 defendant and its affiliated railroad constructed the overpass in question; and in 1926 the railroad company abandoned two of the four tracks maintained on the bridge. Defendant has had exclusive control of the bridge since then. It has used the railroad over the bridge largely for transportation of ore from the pits to the washing plant. As many as 350 cars of this ore have passed over the bridge per day in the operating season.

The accident here involved occurred in the early evening of March 12, 1947. The car in which the three girls were riding was being driven by Ralph Jones, who had never driven over this road before. Jones was a young man of about 20 years. There were four young people in the back seat and two young girls in the front seat with the driver. They were on their way from Deer River to Hibbing by way of Coleraine and Bovey. For a few days prior to March 12 the weather had been warm for the season. On that day it was warmer than it had been, the thermometer being in the upper 30's. In the evening mixed rain and snow fell. The road, as it approached the bridge from the south, was paved, 18 feet wide, with two lanes. The center pier of the bridge, which was in the middle of the road, rested on a concrete island about six inches high. The road spread to the right and left of the island and was a little wider as it passed under the bridge. Upon the column supporting the center of the bridge, there was a perpendicular board painted with black and white diagonal stripes and at the bottom of it a "scotch"-type reflector sign. Neither the driver nor any of his passengers observed any of the warning signs on the pier until just as the left front of the car struck the pier. They were at the time traveling between 15 and 20 miles per hour.

It is the contention of plaintiffs that reddish-brown drippings from the ore cars smeared the diagonal stripes and the scotch-type reflector to the extent that their efficiency as warnings was so impaired as to be a contributing cause of the driver's failure to see and avoid the center pier. Careful examination of the record abundantly

supports this contention. Defendant loaded to capacity and did not trim the ore cars destined for the washing plant, with the result that ore fell from the cars as they were hauled from the pit to the plant. These droppings fell upon the bridge and were not removed therefrom until the amount accumulated thereon made it commercially profitable to do so. The bridge was covered with sheet iron, the sheets of which overlapped, but they were not soldered at the joints. The result was that the dampness of the ore, plus rain or melting snow, caused a reddish-brown mixture to drip through the nail holes and joints onto the roadway and warning signs to such an extent that the signs were smeared and dimmed. As we view the record, it justified the jury in finding that the warning signs were sufficiently impaired and obliterated to contribute to the driver's failure to see and avoid the pier. M. S. A. 169.08 reads as follows:

"No person shall, without lawful authority, attempt to or *in fact* alter, *deface,* injure, knock down, or remove *any official traffic-control device* or any railroad sign or signal or *any inscription,* shield, or insignia thereon, or *any other part thereof."* (Italics supplied.)

The record before us justified the jury in finding that there was a violation of this statute, which of itself was prima facie evidence of negligence under § 169.96. A finding of connection as a contributing cause was also justified.

In the light of the statute, if the affirmative acts of defendant caused the smearing of the warning signs with the reddish-brown mixture, the jury was justified in finding that there was nothing to excuse defendant from compliance with the statute, and the prima facie case became conclusive. Even without the statute, we regard the evidence as sustaining a finding of common-law negligence.[2]

---

[2]Since the negligence here consists of affirmative acts in defacement of highway signs which were put in place for the benefit of travelers on the highway, cases involving collision with a legalized obstruction in the highway which hold the columns are not a nuisance or negligence are not in point: *e. g.,* Lorentz v. Public Service Ry. Co. 103 N. J. L. 104, 134 A. 818, 49 A. L. R. 989; Weis v. Long Island R. Co. 262 N. Y. 352, 186 N. E. 861; Pugh v. City of Catlettsburg, 214 Ky. 312, 316, 283 S. W. 89, 91, 46 A. L. R.

Experience has shown that these center piers are among the most hazardous of structures to travelers, especially at night or under weather conditions inimical to visibility of warning signs. No person of ordinary prudence would regard the obscuring of the signs as anything but lack of ordinary care.

■ Such being the case, defendant's requests to charge were irrelevant to the issues, and its exceptions to the charge given are without merit.

■ There was insufficient evidence to go to the jury on the contributory negligence of any of plaintiffs. The burden of proving such negligence was on defendant. Defendant failed to show that they were aware of the danger. None of the passengers in the front seat had been over the road before. Under those circumstances, it was a question of law for the court. Cf. Burgess v. Crafts, 184 Minn. 384, 238 N. W. 798; Engholm v. Northland Transp. Co. 184 Minn. 349, 238 N. W. 795; Hoffman v. City of St. Paul, 187 Minn. 320, 245 N. W. 373, 86 A. L. R. 198. The negligence of the driver, if any, was not imputable to the passengers under the circumstances of the case.

Affirmed.

939; Tennessee Cent. Ry. Co. v. Hancock's Adm'x, 245 Ky. 426, 53 S. W. (2d) 708; Allen v. N. Y. Cent. R. Co. 228 App. Div. 382, 239 N. Y. S. 140; Barrett v. Southern Pac. Co. 207 Cal. 154, 277 P. 481, superseding (Cal. App.) 269 P. 551.