# FRANCES URBAN v. CONTINENTAL CONVENTION & SHOW MANAGEMENT, INC., AND OTHERS.[1]

February 18, 1955.

No. 36,448.

*Louis B. Schwartz,* for appellant.

*Benedict S. Deinard* and *Leonard, Street & Deinard,* for respondents.

[1]Reported in 68 N. W. (2d) 633.

DELL, CHIEF JUSTICE.

Action brought under the Fair Labor Standards Act of 1938[2] to recover overtime wages, liquidated damages, and reasonable attorney's fees. Plaintiff appeals from judgment in favor of individual defendants, Emmett L. Duemke and William S. Brede.

Plaintiff had been employed as a stenographer by the defendant Continental Convention & Show Management, Inc., (hereinafter referred to as the corporation) since its inception in April 1947. The corporation, which had put on trade shows in Minneapolis, planned to produce a food show in the Minneapolis auditorium running from September 11 through September 19, 1948. Work had begun on the show in December 1947. In the latter part of August and the first part of September 1948, Ludford, president and then sole owner of the corporation, had some conversations with the individual defendants concerning the appearance of the comedians, Olson and Johnson, at the food show. It was agreed that the individual defendants would assist the corporation in obtaining the necessary funds to pay for the act, and in turn the proceeds of the show would be used to pay certain current as well as outstanding debts of the corporation, including amounts owing to the individual defendants. One-third of the net profits was to be paid to the individual defendants after the payment of these debts. A written agreement between Ludford, Duemke, and Brede, dated September 3, 1948, provided primarily for the order in which the various obligations were to be paid. Plaintiff, as secretary of the corporation, certified the adoption of a resolution, also dated September 3, 1948, which, among other things, authorized Ludford to borrow the necessary funds and embodied the provisions of the written contract.

Plaintiff contends that, by virtue of their joint participation in the food show, the defendants became joint adventurers and consequently liable for her back pay for overtime work owing for the period January 1, 1948, to September 30, 1948, which amounts to

[2]52 Stat. 1060, *et seq.*, as amended, 29 USCA, § 201, *et seq.*

$932.86.[3] She further claims interest, liquidated damages in an amount equal to her back pay, and reasonable attorney's fees pursuant to § 16(b) of the Fair Labor Standards Act.

To support her contention that the defendants were joint adventurers, plaintiff relied to some extent on the oral conversations between the defendants prior to the date of the written contract. Testimony as to these conversations was stricken by the trial court on the ground that it constituted parol evidence at variance with the unambiguous terms of the written contract. Other evidence also tending to show that defendants were engaged in a joint adventure was excluded. The court granted individual defendants' motion for a directed verdict in their favor, with leave to the plaintiff to proceed against the defendant corporation.

■ At the outset it is necessary for us to consider plaintiff's contention, made for the first time in her reply brief, that she should have been permitted to recover regardless of whether she came within the Fair Labor Standards Act. Section 16(b) of the act provides:

"Any employer who violates the provisions of section 6 or section 7 [fixing minimum wages and maximum hours, respectively] of this Act shall be liable to the employee or employees affected in the amount of their unpaid minimum wages, or their unpaid overtime compensation, as the case may be, and in an additional equal amount as liquidated damages. Action to recover such liability may be maintained in any court of competent jurisdiction * * *. The court in such action shall, in addition to any judgment awarded to the plaintiff or plaintiffs, allow a reasonable attorney's fee to be paid by the defendant, and costs of the action."[4]

---

[3]The complaint alleges that this sum is for both straight and overtime pay owing the plaintiff. Since plaintiff was paid a rate in excess of the minimum wage, her recovery under the act must be based solely on failure to pay overtime. The evidence shows that she had $726.32 owing in unpaid overtime, the balance of her claim consisting of two dishonored checks. There was no showing whether those checks were supposed to constitute regular or overtime wages.

[4]52 Stat. 1069.

The complaint clearly discloses that plaintiff was proceeding under the above-quoted section of the act. It alleges, among other things, that plaintiff was employed by the corporation as a stenographer; that she was engaged in interstate commerce under the provisions of the Fair Labor Standards Act; that back pay was owing her for the period from January 1, 1948, to September 30, 1948; that on or about September 3, 1948, the defendants entered into an agreement as joint adventurers whereby they agreed to pay all expenses of the business including unpaid past expenses; that the defendants operated and ran the business; and that she was entitled to recover back wages, liquidated damages, and attorney's fees. The case was obviously tried under this theory, and we can find no litigation by consent of the issues under some other theory.[5] In her brief plaintiff begins her "Statement of Facts" by stating: "This action was brought for overtime wages under the Fair Labor Standards Act of 1938, * * *." It is difficult to understand the contention now made in plaintiff's reply brief that it makes no difference whether she came under the act or not since that "question would only go to the enhancement of the damages and not to the liability." It is elementary that on appeal a case will be considered in accordance with the theory on which it was pleaded and tried, and a party cannot for the first time on appeal shift his position.[6] Moreover, an examination of the judgment roll on file with this court reveals that plaintiff proceeded to obtain findings and order for judgment against the defendant corporation for the amount claimed, liquidated damages, and reasonable attorney's fees, as provided in § 16(b) of the act. We are obliged, therefore, to consider plaintiff's various arguments in conjunction with the theory upon which she pleaded and tried the case, namely, under § 16(b) of the Fair Labor Standards Act, and not under any other possible theory upon which she might have proceeded if she had so desired.

■ Plaintiff contends that the court erred in directing a verdict for the individual defendants and that she is entitled to judgment

[5]For a discussion of "litigation by consent," see Roberge v. Cambridge Co-op. Creamery Co. 243 Minn. 230, 67 N. W. (2d) 400.

[6]1 Dunnell, Dig. (3 ed.) § 401.

notwithstanding the verdict.. It is argued that in any event she is entitled to a new trial because of numerous errors, primarily in the exclusion of evidence offered by the plaintiff tending to show that defendants became joint adventurers. We find it unnecessary to pass on the numerous assignments of error relating to the evidentiary questions involved. Even if the court had received and considered all the evidence offered by the plaintiff, in our opinion she completely failed to establish that either or both of the individual defendants were liable to her under the provisions of the Fair Labor Standards Act.

Recovery under the act is predicated on the existence of an employer-employee relationship.[7] The determination of whether an employment relationship exists must be liberally made in light of the remedial nature of the act[8] and, of course, is not necessarily dependent upon common-law tests[9] or, for that matter, criteria applied under other types of social legislation.[10] It is clear, however, that despite its broad definitions of "employ," "employee," and "employer"[11] there are limits to the coverage intended by the act.[12] Moreover, where the question is not whether the employee is covered but rather who is to be held liable as employer, reference to the

[7]See, e.g., Bowman v. Pace Co. (5 Cir.) 119 F. (2d) 858; Lewis v. Virginia Engineering Co. Inc. (E. D. Va.) 80 F. Supp. 886.

[8]Walling v. Rutherford Food Corp. (10 Cir.) 156 F. (2d) 513, 516, and cases cited, affirmed in part and modified in part, Rutherford Food Corp. v. McComb, 331 U. S. 722, 67 S. Ct. 1473, 91 L. ed. 1772.

[9]See, Krause v. Trustees of Hamline University, 243 Minn. 416, note 9, 68 N. W. (2d) 124, note 8, pointing out the different considerations in determining the employer-employee relationship as regards vicarious tort liability and recovery under the workmen's compensation act.

[10]See, Walling v. Portland Terminal Co. 330 U. S. 148, 150, 67 S. Ct. 639, 640, 91 L. ed. 809, 812.

[11]Section 3 of the act, 52 Stat. 1060, 29 USCA, § 203, provides: " 'Employer' includes any person acting directly or indirectly in the interest of an employer in relation to an employee * * *"; " 'Employee' includes any individual employed by an employer"; " 'Employ' includes to suffer or permit to work."

[12]See, Rutherford Food Corp. v. McComb, 331 U. S. 722, 67 S. Ct. 1473, 91 L. ed. 1772; Maddox v. Jones (N. D. Ala.) 42 F. Supp. 35.

various factors customarily said to be characteristic of an employment relationship is clearly warranted. This court has repeatedly held that the right to control, including the right to hire and discharge, is an essential, if not the most significant, factor in determining an employment relationship.[13] Other courts, in construing the Fair Labor Standards Act, have emphasized this same factor[14] and, while we feel that no one isolated factor should be determinative of the relationship, the right of control does, under the circumstances of the instant case, serve as a useful guide. It is also well established that, once an employment relationship is created, the employee's express or implied consent is essential to the creation of a new employment relationship.[15]

We fail to see any real suggestion, either in the evidence of record or in that unsuccessfully proferred by the plaintiff, that either of the individual defendants had the right to exercise control over the plaintiff. In fact, such evidence as there is indicates to the contrary. The only evidence bearing on the right of the individual defendants to hire or discharge personnel is that when Duemke thought there was one too many girls working at the show he told Ludford that he "had better let one go." Similarly, when Duemke desired that a particular girl be employed he requested Ludford to hire her. It is not tenable that either Brede or Duemke had the right to exercise even such an indirect type of control over the plaintiff, who had been in the employ of the corporation since April of 1947. There is no evidence to the effect that either of the individual defendants directed the plaintiff in the manner in which her work was to be

---

[13]*E.g.*, Krause v. Trustees of Hamline University, 243 Minn. 416, 68 N. W. (2d) 124; Nesseth v. Skelly Oil Co. 176 Minn. 373, 223 N. W. 608.

[14]See, Fruco Const. Co. v. McClelland (8 Cir.) 192 F. (2d) 241, certiorari denied, 342 U. S. 945, 72 S. Ct. 558, 96 L. ed. 703; Brown v. Minngas Co. (D. Minn.) 51 F. Supp. 363 (citing Minnesota cases); Selby v. J. A. Jones Const. Co. (6 Cir.) 175 F. (2d) 143; Reconstruction Finance Corp. v. Merryfield (1 Cir.) 134 F. (2d) 988; Dugas v. Nashua Mfg. Co. (D. N. H.) 62 F. Supp. 846.

[15]Pocrnich v. Snyder Min. Co. 233 Minn. 81, 45 N. W. (2d) 794; Yoselowitz v. Peoples Bakery, Inc. 201 Minn. 600, 277 N. W. 221; Dahl v. Wunderlich, 194 Minn. 35, 259 N. W. 399.

performed or told her what she was to do. Nor is there any indication that plaintiff treated, or that any reasonable person in her position would treat, either of the individual defendants as her employer. It would be sheer speculation to conclude that she consented to a change in the employment relationship.

At best the evidence sought to be introduced by the plaintiff would show that the defendants, on or about September 3, 1948, became joint adventurers,[16] and that the individual defendants participated to some degree in the management of the food show. By drawing analogy to the rules governing partnerships, it is possible for a joint adventure to become an employer within the meaning of the act.[17] Similarly, an office worker hired by one of the joint adventurers subsequent to the creation of the venture and in the ordinary course of its business could well be an employee of the joint adventure.[18] However, this is not the situation in the instant case. Here the plaintiff had been working for the corporation long before the joint adventure allegedly came about. There is no merit to plaintiff's contention that, because the individual defendants orally agreed to assume unpaid obligations of the corporation, they became liable to her under the act for her back pay accruing prior to September 3, 1948. Section 7(a) of the act provides that "no employer shall employ any of his employees" in excess of the prescribed hourly week without paying overtime compensation.[19] Liability is imposed upon *employers* who violate this provision. It would be absurd to conclude that, prior to the date of the alleged joint adventure, the individual defendants had any control over the hours of plaintiff's labor. While perhaps it is possible that assumption of the obligation to pay accrued overtime wages by a third person or a new employer might give rise to recovery by the employee under some circumstances not present here, liability under the act is expressly and

[16]The essentials to the formation of a joint adventure are enumerated and discussed in Tate v. Ballard, 243 Minn. 353, 68 N. W. (2d) 261.

[17]Wilson v. Shuman (8 Cir.) 140 F. (2d) 644, holding a partnership an employer within the meaning of the act.

[18]See, Warren v. Mosher, 31 Ariz. 33, 250 P. 354, 49 A. L. R. 1311.

[19]52 Stat. 1063, as amended by 63 Stat. 912, 29 USCA, § 207(a).

exclusively placed on the defaulting employer. Moreover, there is a total lack of evidence, even as offered and rejected, that the individual defendants became plaintiff's employers subsequent to the alleged agreement, regardless of whether that agreement might be construed as creating a joint adventure.

Assuming that plaintiff satisfied her burden of showing that she was engaged in the type of work covered by the act,[20] neither the evidence of record nor that offered but rejected, viewed in the light most favorable to the plaintiff, can reasonably be said to support the conclusion that either of the individual defendants were plaintiff's employers within the meaning of the Fair Labor Standards Act. It follows that the trial court correctly directed a verdict in favor of the individual defendants.

Affirmed.

---

[20]The employee has the burden of proving that he was engaged in interstate commerce or the production of goods for commerce. Pakarinen v. Butler Bros. 218 Minn. 496, 16 N. W. (2d) 769; see, 11 Dunnell, Dig. (3 ed.) § 5812b.