**Peter J. OLMSCHEID, Appellant,**

v.

**James Arthur PATERSON, Defendant.**

**MINNEAPOLIS, NORTHFIELD AND SOUTHERN RAILWAY, Defendant and Third–Party Plaintiff, Respondent,**

v.

**CITY OF EDINA, Third–Party Defendant, Respondent,**

**and**

**Pennsylvania General Insurance Company, intervenor, Appellant.**

**No. C5-88-2425, C5-89-104.**

Court of Appeals of Minnesota.

May 16, 1989.

Review Denied July 12, 1989.

---

See also 425 N.W.2d 312.

Robert M. Austin, Austin & Roth, Minneapolis, for Peter J. Olmscheid.

Winthrop A. Rockwell, Andrew Dunne, Faegre & Benson, Minneapolis, for Minneapolis, Northfield and Southern Ry.

Don C. Day, Peahl & Day, Minneapolis, for City of Edina.

Richard P. Mahoney, Victor E. Lund, Mahoney, Dougherty & Mahoney, Minneapolis, for Pennsylvania Gen. Ins. Co.

Heard, considered and decided by SHORT, P.J., and RANDALL, and KALITOWSKI, JJ.

## OPINION

RANDALL, Judge.

This is an appeal from a summary judgment. The trial court ruled that Minneapolis, Northfield and Southern Railway (Railroad) had no duty to reconstruct or

redesign its trestle to alleviate a visual obstruction at an intersection. The trial court also ruled that Pennsylvania General Insurance Company (Intervenor) could not amend its complaint to assert a negligence claim against the City of Edina (Edina). We affirm.

## FACTS

On June 18, 1978, appellant Peter J. Olmscheid was injured when his motorcycle collided with a car driven by James Arthur Paterson. The accident occurred at the corner of Eden and Brookside Avenues in Edina, Minnesota. Neither driver saw the other before the collision.

Directly east of the intersection is a railroad trestle. At the time of the accident, the trestle was a wood supported railroad overpass. The trestle impairs the vision of motorists approaching the intersection. When the trestle was originally constructed in 1913, Brookside Avenue did not exist and Eden Avenue was a dirt road. The visual obstruction arose after Brookside Avenue was developed and the volume of commercial traffic in the area increased.

In the early 1970's, the Railroad, with the approval of Edina, made structural modifications to the trestle to alleviate the visual obstruction at the intersection. These modifications improved the sight lines at the intersection, but a hazard still exists. The hazard could have been completely eliminated through traffic control measures or the complete redesign or relocation of the trestle.

After the accident, appellant commenced an action in Hennepin County District Court against Paterson [1] to recover for his injuries. On June 4, 1979, appellant amended his complaint to include a claim against the Railroad. On July 10, 1980, the Railroad obtained stipulations from the other parties to permit it to serve a third-party complaint against Edina.

Appellant filed a separate action against Intervenor to recover underinsured motorist benefits. Intervenor paid appellant

$223,403.45 in benefits on October 27, 1982. On October 23, 1984, Intervenor filed a notice of intervention in appellant's suit against the Railroad. Intervenor was permitted to enter the lawsuit on December 20, 1984.

On August 2, 1985, the Railroad served its third-party complaint on Edina. However, the statute of limitations on appellant's claims against Edina expired on June 28, 1984.

Intervenor initially filed one claim against the Railroad. On May 23, 1986, Intervenor attempted to amend its complaint to assert a claim against Edina. Edina opposed the amendment, so Intervenor filed a motion for leave to amend its complaint. At about the same time, the Railroad filed a motion seeking summary judgment against both appellant and Intervenor on the issue of its duty to reconstruct the trestle.

The trial court denied Intervenor's motion to amend its complaint to assert a claim against Edina. The trial court denied the motion because the statute of limitations on any claims appellant had against Edina had expired. Intervenor appeals this ruling.

The trial court also granted the Railroad's motion for summary judgment. The court ruled that the railroad had no common law or statutory duty to reconstruct its trestle to alleviate the visual obstruction at the intersection. Both Intervenor and appellant challenge this ruling.

## ISSUES

1. Does Intervenor have a cause of action against the Railroad for its failure to serve Edina with a third-party complaint within the limitations period?

2. Did the trial court err by denying Intervenor's motion to amend its complaint to assert a claim against Edina?

3. Does the Railroad have an affirmative duty to reconstruct a trestle to help alleviate a visual obstruction?

---

1. Appellant and Paterson have entered into a stipulation of dismissal with prejudice regarding appellant's claims against Paterson. Appellant and Paterson settled on August 12, 1980.

## ANALYSIS

### I.

*Intervenor's Cause of Action Against the Railroad*

Intervenor argues that it should have a cause of action against the Railroad for the Railroad's failure to serve Edina within the limitations period. Railroad contends that this issue is not properly before the court, and a determination of the issue would require an advisory opinion.

█ We hold that the question of whether Intervenor has a cause of action against the Railroad for failing to timely serve Edina is not properly before this court. An appellate court considers a case "in accordance with the theory on which it was pleaded and tried * * *." *Security Bank of Pine Island v. Holst*, 298 Minn. 563, 564, 215 N.W.2d 61, 62 (1974) (per curiam) (quoting *Urban v. Continental Convention & Show Management, Inc.*, 244 Minn. 44, 47, 68 N.W.2d 633, 635 (1955)). Intervenor did not plead such a claim in either its complaint or amended complaint. Discussion of the question by this court would amount to an advisory opinion. Advisory opinions are not favored and are not generally given. *AAA Electric & Neon Service, Inc. v. R–Design Co.*, 364 N.W.2d 869, 871 (Minn. Ct.App.1985) (citations omitted). Therefore, we do not address the merits of this question.

### II.

*Amendment of Intervenor's Complaint*

Intervenor argues that the trial court should have permitted it to amend its complaint to assert a claim against Edina because Edina had actual notice of appellant's claim by March 12, 1981. Intervenor contends that its amended pleading should re-late back to this date. March 12, 1981, is the date Edina and Railroad agreed not to make Edina a formal party to this lawsuit. Appellant never filed a claim against Edina. The only claim filed against Edina occurred after the limitations period had expired. Edina and Railroad argue that Intervenor has not satisfied the standards which govern changing parties set forth in Minn.R.Civ.P. 15.[2]

The Minnesota Supreme Court addressed a claim similar to Intervenor's in *Leaon v. Washington County*, 397 N.W.2d 867 (Minn.1986). *Leaon* involved an attempt by a plaintiff to amend his complaint to add a new party after the statute of limitations had run. If the relation-back doctrine applied, the plaintiff would have been allowed to add a new party despite the expiration of the limitations period. *Id.* at 871. The *Leaon* court held that in order to relate back to the original pleading and avoid the bar of the limitations period *all* three of the requirements of Minn.R.Civ.P. 15.03 had to be met. *Id.* (emphasis added) The plaintiff in *Leaon* satisfied the first two requirements. *Id.* However, the court held Rule 15.03(2) which requires that "the party to be brought in by amendment * * * knew or should have known that, but for a mistake concerning the identity of the proper party, the action would have been brought against him," had not been satisfied. *Id.*

The *Leaon* court examined the facts surrounding the plaintiff's claim and concluded that the proposed additional party, Palmer, knew that the plaintiff thought Palmer was involved in the underlying incident. The court explained:

> This is not a case of a potential defendant laying low while aware the plaintiff is proceeding under a mistaken belief as

---

**2.** Minn.R.Civ.P. 15.03 provides:

Whenever the claim or defense asserted in the amended pleading arose out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading, the amendment relates back to the date of the original pleading. An amendment changing the party against whom a claim is asserted relates back if the foregoing provision is satisfied and, within the period provided by law

for commencing the action against him, the party to be brought in by amendment (1) has received such notice of the institution of the action that he will not be prejudiced in maintaining his defense on the merits, and (2) knew or should have known that, but for a mistake concerning the identity of the proper party, the action would have been brought against him.

to who he is. This is simply a case of a plaintiff choosing, for whatever reasons, not to make a known defendant a party until it was too late to do so. *Id.* at 872.

We hold that *Leaon* controls this issue and Intervenor's attempt to amend its pleading to assert a claim against Edina was correctly denied by the trial court. Like the plaintiff in *Leaon*, Intervenor knew all along a claim could be asserted against Edina. Application of the relation-back doctrine is not justified simply because Intervenor waited until the limitations period expired before it asserted a claim against Edina. Additionally, the relation-back doctrine requires the filing of an original pleading. Here, the only pleading ever served on Edina was served after the limitations period expired. Thus, application of the relation-back doctrine to the date the Railroad served a third-party complaint against Edina still would not bring Intervenor's claim within the limitations period.

Furthermore, Intervenor's theory that its amended complaint should relate back to the date Edina had actual notice of the claim is not supported by either rule or case law.[3] Therefore, we affirm the trial court's ruling.

### III.

#### *Railroad's Common Law Duty*

Both Intervenor and appellant argue that the trial court erred by ruling the Railroad had no duty to reconstruct or relocate its trestle to alleviate the visual obstruction at the intersection of Eden and Brookside Avenues. Railroad disagrees. It argues that it should not be held liable for the physical location or design of the trestle because both were approved by Edina. The Railroad contends that its only continuing duty, once it builds a proper trestle, is to keep it in good repair. Furthermore, the Railroad claims that any duty it may have had to alter the construction of its trestle was discharged when it modified the structure with Edina's approval in the early 1970's. The Railroad also points out that the duties it has at "separated crossings" are distinctly different and are at a lower legal threshold from the duties it has at "grade crossings."[4]

The trial court ruled that the Railroad had no legal duty to redesign or reconstruct its bridge to alleviate the visual obstruction. The trial court relied on *Murphy v. Great Northern Railway Co.*, 189 Minn. 109, 248 N.W. 715 (1933), to support its ruling. *Murphy* holds that absent affirmative acts of negligence, a railroad's duty to maintain its bridges is met when the railroad constructs a bridge in accordance with plans formulated by the highway department and keeps that bridge in good repair. *Id.* at 116–17, 248 N.W. at 718. *Murphy* involved a collision between an automobile and the center pier of a railroad's bridge. The injured motorist argued that the railroad should have supplied a reflector for the bridge and that the railroad's failure to do so breached its duty to maintain the bridge. The Minnesota Supreme Court rejected this claim and held that the duty to furnish warnings to travelers rested with the highway department, not the railroad. *Id.* at 117, 248 N.W. at 718. The court also stated that the railroad discharged its duty by building a proper bridge and maintaining it in good working order. *Id.*

---

3. Intervenor relies on *Swenson v. Emerson Electric Co.*, 374 N.W.2d 690 (Minn.1985), *cert. denied* 476 U.S. 1130, 106 S.Ct. 1998, 90 L.Ed.2d 678 (1986), as support for its "relation-back by notice" argument. Its reliance is misplaced for two reasons. First, *Swenson* did not discuss the issue of amending a pleading to add a new party. *Swenson* involved asserting a new claim against a party *already in the lawsuit.* Second, in *Swenson*, an original pleading had been filed within the limitations period. Here, the only claim filed against Edina *was filed after the limitations period,* and allowing Intervenor to amend its complaint to relate back to that pleading would serve no purpose.

4. A "separated crossing" is one where tracks cross the public highway on a different level, either above or below the surface. A "grade crossing" is one where tracks intersect with public thoroughfares on the same level and a risk of car/train collisions exist.

Intervenor and appellant contend that the continued vitality of *Murphy* has been called into question by subsequent decisions, specifically, *Robinson v. Duluth, Missabe & Iron Range Railroad Co.*, 229 Minn. 155, 38 N.W.2d 183 (1949). *Robinson* involved a collision between a car and the center pier of a railroad bridge. Reddish-brown drippings from a mining company's transport cars had smeared the warning devices on the center pier of the bridge. The plaintiffs claimed that the drippings made the center pier more difficult to see and contributed to the cause of the accident. *Id.* at 157, 38 N.W.2d at 185. The Minnesota Supreme Court agreed and ruled that if the acts of the defendant made the warning signals more difficult to see, the jury could find the defendant guilty of common law negligence. *Id.* at 158, 38 N.W.2d at 186. *Robinson* is readily distinguishable because the drippings from the passing cars were found to be an affirmative act of negligence over which the railroad had control and a duty to correct. Here, Railroad's trestle is simply a static object which was properly and reasonably built when originally constructed.

Contrary to assertions of Intervenor and appellant, *Robinson* is consistent with the holding of *Murphy*. The *Robinson* court imposed liability on a mining company because its *affirmative* acts obscured warning signs and reflectors on the center pier of the bridge. *Robinson* was a true "maintenance" case. The mining company had a duty to maintain the warning signs placed on the bridge by the highway department because its active operations obscured the signs. *Id.*

Intervenor next asserts that *Perkins v. National Railroad Passenger Corp.*, 289 N.W.2d 462 (Minn.1979), imposes upon railroads the duty of exercising due care under all of the circumstances at every crossing. *Perkins* involved an auto/train collision which killed the driver of the auto. Before the accident, the railroad had been informed of the dangerous nature of the intersection. *Id.* at 464–65. The crossing was particularly dangerous because trains passed through the intersection at 60–70 mph. Despite this knowledge, the railroad took no safety precautions beyond those required by the applicable statute. *Id.* The Minnesota Supreme Court ruled that despite the railroad's compliance with statutes and regulations, it could still be found negligent. *Id.* at 466.

The Railroad argues that the rule set forth in the *Perkins* case is inapplicable here because *Perkins* concerned a railroad's liability for an accident which occurred at a *grade* crossing. Railroads have much greater duties at grade crossings because the danger of a collision between a car and a train exists. *See, e.g.*, Minn.Stat. §§ 219.16–219.20 (1986) (railroads have duty to erect stop signs and warning signs at grade crossings).

Also, the *Perkins* case is significant because it overruled the "extrahazardous doctrine." [5] The Railroad asserts that the *Perkins* rule only applies to grade crossing cases in which the now abandoned extrahazardous doctrine might have applied.

We agree with the Railroad and hold that *Perkins* does not apply in this case. We find the distinctions drawn by the Railroad between affirmative acts and static physical location persuasive. Since the Railroad committed no affirmative acts of negligence in the operation or maintenance of its trestle, the trial court correctly relied on *Murphy*. This accident, like the one in *Murphy*, did not occur because the Railroad built a bad bridge. Here, the railroad originally built a proper bridge. In the early 1970's, when problems arose at the intersection due to increased traffic flow, the Railroad redesigned the bridge pursuant to plans approved by Edina. Thus, appellant's argument that the Railroad has failed to adapt its trestle to accommodate changing circumstances is not legally persuasive. We do not find a cause of action merely because the Railroad could "possibly" have done more to alleviate the visual problem at the intersection than Edina required it to do. Edina is the body charged with maintaining traffic control in this area. On the occasion when it was asked,

---

**5.** The "extrahazardous doctrine" required a jury to find a crossing "more dangerous than an ordinary crossing" before the railroad could be held liable for failing to take warning steps beyond those statutorily mandated. *Perkins,* 289 N.W.2d at 466.

the Railroad followed through with changes. We hold that the trial court did not err by concluding that the Railroad had no affirmative duty to redesign its trestle. The trial court properly granted summary judgment.

### Railroad's Statutory Duties

Intervenor next contends that the Railroad's statutory duties [6] to maintain and construct its crossings free of obstructions encompass the duty to redesign the trestle. We disagree. First, the statutes refer only to grade crossings. Just as importantly, they control affirmative negligent acts, or affirmative omissions, and do not apply in this case, where the alleged negligence concerns placement [7] rather than maintenance. Thus, we find these statutes impose upon the Railroad no duty to redesign this trestle at a separated crossing.

Intervenor's final argument is that the position of the Railroad's trestle violates the public nuisance statute [8] because it makes the public highway dangerous for passage. According to Intervenor, this violation proves that a civil duty has been breached. We hold that the static physical location of the Railroad's trestle does not violate the public nuisance statute. Again, the statute appears to contemplate actual obstructions caused by affirmative acts or omissions. Since the Railroad's actual operations did not cause an obstruction at the intersection, the Railroad did not violate the statute.

We find *Kelsey v. Chicago, Rock Island and Pacific Railroad Co.*, 264 Minn. 49, 117 N.W.2d 559 (1962) instructive on this issue. In *Kelsey*, the supreme court stated that when a negligent violation of the public nuisance statute is alleged, "the statutory and common-law duty are identical." *Id* at 53, 117 N.W.2d at 561–62. We have already determined that the Railroad breached no common law duty in this case. We reject Intervenor's claim that the position and design of the trestle, which was properly positioned and designed when originally built, violated the public nuisance statute. The Railroad did not intentionally interfere with or obstruct anyone or anything when they constructed the trestle. Only the passage of time and population growth, not the Railroad's periodic maintenance, lent itself to the partial visual obstruction.

## DECISION

The question of whether Intervenor has a cause of action against the Railroad for failing to timely serve Edina is not properly presented. The trial court did not err by denying Intervenor's motion to amend its complaint to add a claim against Edina. The Railroad did not have an affirmative duty to alter or reconstruct a trestle to alleviate the visual obstruction at a separated grade crossing and intersection.

Affirmed.

---

6. Minn.Stat. § 219.07 (1978) (repealed in 1980) provides in pertinent part:

   Every railroad company shall construct and maintain in good repair and free from snow or other obstruction, wherever any of its lines cross a public road, sufficient crossings, * * *.

   Minn.Stat. § 219.08 (1978) provides:

   Every railroad company in this state shall keep well planked and in a safe and passable condition every crossing over any public highway, and when any such railroad company shall have changed or raised the grade of its tracks at any such crossing it shall also grade the approaches on each side so as to make the approach and crossing of such tracks safe and easy for teams with loads and other vehicles.

7. It is conceded that the original placement was reasonable. What Intervenor argues is that the passage of time rendered placement improper, and thus somehow these two statutes control. We find that these statutes speak to other matters.

8. Minn.Stat. § 609.74 (1986) provides:

   Whoever by an act or failure to perform a legal duty intentionally does any of the following is guilty of maintaining a public nuisance, which is a misdemeanor:

   * * * * * *

   (2) Interferes with, obstructs, or renders dangerous for passage, any public highway or right-of-way, or waters used by the public; or