**TAR HEEL COALS, INC., et al., Appellants,**

**v.**

**TURNER ELKHORN MINING COMPANY,
Appellee.**

Court of Appeals of Kentucky.

Sept. 19, 1969.

Rehearing Denied Jan. 23, 1970.

J. K. Wells, Wells & Wells, Paintsville, for appellants.

Harris Howard, Howard, Francis & Howard, Prestonsburg, for appellee.

DAVIS, Commissioner.

A truck owned by Tar Heel Coals, Inc., and operated by its employee, Billy Ray Trent, collided with and damaged an overhead chute maintained by the appellee, Turner Elkhorn Mining Company, spanning Kentucky Highway No. 1210. Turner sued Tar Heel Coals, Inc., and Trent. The case was submitted to a jury on the issues of negligence of Tar Heel and its driver and the contributory negligence of Turner. The jury returned its verdict for the defendants, but the trial court granted judgment n.o.v. and submitted only the issue of damages to another jury, which awarded Turner some $5200. On this appeal Tar Heel and Trent assert that the court improperly granted the judgment n.o.v. because (1) the evidence created a jury issue as to whether the defendants were negligent and (2) the evidence created a jury issue as to contributory negligence on the part of Turner.

The coal tipple and appurtenant chute containing a conveyor belt were constructed in 1944. At that time no road passed under the chute. In 1950, the Department of Highways of the Commonwealth of Kentucky obtained a right-of-way conveyance from Turner incident to the construction

of Kentucky Highway 1210 as a rural secondary road. There was no monetary consideration paid by the Department of Highways to Turner for the right of way. The deed for the right of way contained the following provision:

"It is further agreed and understood by the parties hereto that party of the second part [Department of Highways] will not interfere with the mining operations, particularly the coal tipple and conveyor line into tipple. Party of the first part [Turner] also retains the right to maintain and use the truck scales which is now located on what will be the said right-of-way conveyed herein."

The vertical clearance afforded by the chute ranged from a low of eleven feet, four inches on one side of the highway to fourteen feet on the other side. The low side was on the right of the highway for traffic proceeding as was Trent in driving Tar Heel's truck.

The accident occurred after dark on April 29, 1966. It had been raining heavily shortly before the accident, but the downfall had diminished to a "drizzle" by the time the accident occurred. Trent had traveled Kentucky Highway 1210 some forty or more times and was aware of the chute crossing the road but testified:

"Well, I had seen it in times passing. Yes, sir, I was pretty well familiar with where it was.

Q.60. And had you noticed that it was high on one side and lower on the other?

A. No, sir."

Trent was proceeding from Hazard to a garage in Huntington, West Virginia, with an auger conveyor welded to the trailer. He testified that the overall height of the loaded vehicle was twelve feet, four inches. It is significant that KRS 189.221 fixes a maximum height of eleven feet, six inches for such vehicles, subject to the provisions of KRS 189.222(1) (a) permitting maximum height of 13½ feet for

such rigs in special circumstances as may be designated and authorized by the Commissioner of Highways. No special permission to operate the vehicle with loaded height exceeding eleven feet, six inches was sought or obtained. The district maintenance engineer of the Highway Department testified that had permission been sought the routing for the trip would not have been made over Kentucky Highway 1210, explaining that one purpose of the regulations was to enable routings over highway facilities adequate to accommodate the outsize vehicles.

There was no light or other warning device on the conveyor chute except a small metal sign placed on the chute by the Department of Highways indicating a clearance of only nine feet, four inches. It appears that no change in the grade of the road or elevation of the chute has occurred since the road was constructed. Neither has there been any increase in the statutory maximum height of eleven feet, six inches in the normal cases.

Trent said he was driving about thirty to thirty-five miles per hour with his windshield wipers activated and his headlights on bright beam. He said that he did not see the overhead chute until it "loomed" before him when he was within thirty feet of it. He explained that he probably could have seen it at a greater distance had he been directing his vision upward but said that he was looking carefully and closely at the surface of the roadway.

Trent was acutely aware of the height problem because he had encountered some difficulty when the auger struck a traffic signal in the City of Martin. Later in the trip, and before he struck the conveyor chute, he experienced clearance difficulty on a bridge near Allen, Kentucky. He had driven onto the bridge before perceiving that a beam might not afford ample clearance and had backed his rig off the bridge rather than risk passage under the beam. This caused him to change his planned routing to Huntington. As he retraced

his route he noticed some people "having some kind of a party or something," so he stopped and asked about the location of Kentucky Highway 1210. Upon receiving directions as to how to reach that road, he proceeded until the accident occurred.

The appellants' first contention is that there was evidence of substance warranting a jury finding that appellants were free of negligence. The gist of the argument on this point is that despite the prior knowledge of the existence of an obstruction in a public way, a driver is not guilty of negligence when injured as the result of the obstruction unless he saw it or knew, or reasonably should have known, of the danger in time to avoid it. Appellants present a number of authorities dealing with this general proposition, among which Guyan Chevrolet Company v. Dillow, 264 Ky. 812, 95 S.W.2d 796, Commonwealth v. Bowman, 267 Ky. 50, 100 S.W.2d 801, and Slusher v. Brown, Ky., 323 S.W.2d 870, are representative and typical. Substantially all of the authorities relied upon by appellants in this regard relate to contributory negligence, but the principles as to whether the actor was negligent or contributorily negligent are substantially identical for our purposes. It will be recalled that Trent was operating a vehicle which he knew to be higher than the statutory maximum. Moreover, he was traveling a route with which he was relatively familiar and which he knew to be a secondary or rural-type thoroughfare. Although he professed no prior knowledge of the low clearance at the chute, he admitted knowledge of its existence. In light of his experience in striking the traffic signal at Martin and backing off the bridge at Allen, it is difficult to find merit in appellant's contention that a jury could find from the evidence that Trent was free of negligence. This is especially so in view of the atmospheric conditions and in light of Trent's admission that he could have seen the overhead chute at a substantially greater distance than thirty feet had he not been focusing his attention so minutely on the surface of the road just in front of him. It is our conclusion that the trial court was justified in holding as a matter of law that Trent was negligent.

It remains then to determine whether a submissible jury issue was presented as to contributory negligence on the part of Turner in maintaining the chute over the highway with less vertical clearance than eleven feet, six inches and without lights or other warning devices. On this point the appellants have called attention to many decisions of this and other courts and have made particular reference to the annotation in 67 A.L.R.2d 1364. The annotation discusses cases concerning the liability of railroads for injuries or damages resulting from motor vehicles colliding with bridges or overhanging structures because of insufficient vertical clearance. It is of interest to note that participation of a governmental agency and compliance or noncompliance with public regulations as to such structures have been considered by the courts in determining whether railroads were negligent in various circumstances presented in the cases. See 67 A.L.R.2d 1373–1376.

Appellants call attention to Tennessee Central Railway Company v. Hancock's Adm'x, 245 Ky. 426, 53 S.W.2d 708, in which this court recognized that the railroad had a duty to maintain a viaduct crossing the highway in a reasonably safe condition for public travel. In the course of that opinion, it was noted that:

"As changes in the ordinary and usual mode of travel may have rendered the crossing and structure dangerous, the duty rested upon the company to meet those changed conditions and the exigencies of modern travel. And, if by reason of a failure to do so the company failed to use ordinary care not to hinder the present reasonable use of the highway and did not meet the reasonable requirements which that use demanded, then it must be held answerable for any resulting damage to one to whom the

duty was owing." Id., 53 S.W.2d at 710.

In Tennessee Central Railway the court quoted with approval from Pugh v. City of Catlettsburg, 214 Ky. 312, 283 S.W. 89, 46 A.L.R. 939, in which a railroad viaduct diagonally crossing the street with a pier in the center of the street had been constructed pursuant to an agreement with the city as permitted by statute. The court concluded in Pugh that since the structure was built and maintained as provided by the plans approved by the city neither the city nor the railroad was liable in damages for injury to a driver, since the plan as adopted was not manifestly unsafe or dangerous. Adhering to that precept, the court concluded in Tennessee Central Railway that a verdict finding the railroad negligent in maintaining the structure was flagrantly against the evidence.

KRS 177.106 relates to permitted encroachments over public highway rights of way. The agreement contained in the highway deed quoted earlier in this opinion specifically referred to the continued maintenance and use of the conveyor line into the tipple. That agreement is tantamount to a "permit" as envisioned in KRS 177.-106. The statutory enablement for permissive encroachments contained in KRS 177.106 distinguishes the case at bar from Terrell v. Tracy, 312 Ky. 631, 229 S.W.2d 433, and the decisions discussed there dealing with the absence of statutory authority of a city to authorize encroachments upon any public way.

 In gauging whether any actor is negligent, the court must weigh the reasonableness of the conduct measured by the ordinary experience of mankind. Using this approach, we note that Turner was assured by the Department of Highways that its existing chute could and would be left in place over the highway to be constructed. The chute was permitted to remain, and no change in grade or size regulations has occurred since the road was built. Turner knew that the road was a secondary farm-to-market highway. Turner knew that the Highway Department had not seen fit in the more than fifteen years of the road's existence to require signs or other warnings. There is no suggestion that the Highway Department made any demand of Turner to do anything to protect the traveling public as regards the chute. It is apparent that the permitted encroachment was not "manifestly unsafe." It seems plain that a reasonably prudent person would act as Turner has acted in the premises in light of the facts which we have summarized. This being so, it follows that no jury issue was created respecting the claimed contributory negligence of Turner. Hence, the action of the trial court in granting judgment n.o.v. was proper.

The judgment is affirmed.

All concur.