Janet SWENSON, individually and as trustee for the heirs at law and next of kin of Edward C. Swenson, Respondent,

v.

The EMERSON ELECTRIC COMPANY, Defendant and Third Party Plaintiff, Petitioner, Appellant,

The A.O. SMITH CORPORATION, Defendant and Third Party Plaintiff, Appellant,

v.

LAKE REGION COOPERATIVE, Third Party Defendant, Respondent.

No. C8–84–188.

Supreme Court of Minnesota.

Sept. 20, 1985.

Rehearing Denied Dec. 13, 1985.

Douglas J. Muirhead, Mpls., Robert M. Sussman, John F. Seymour, Washington, D.C. for Emerson.

Thomas L. Athens, Fergus Falls, for A.O. Smith.

Kennedy R. Nervig, Charles R. Kennedy, Wadena, for Lake Region Cooperative.

John C. Lervick, Alexandria, Stanley E. Karon, Jennifer E. Peterson, St. Paul, for respondent.

Mark S. Anderson, St. Paul, for amicus curiae Minn. Ass'n. of Commerce & Industry.

AMDAHL, Chief Justice.

We must decide whether the federal Consumer Product Safety Act, 15 U.S.C. § 2051 *et seq.* (1982), provides a private cause of action for violation of the Consumer Product Safety Commission's substantial product hazard reporting regulations. Plaintiff Janet Swenson sought to amend her complaint to include a claim under the Act. Defendants Emerson Electric Company and A.O. Smith Corporation opposed amendment of the complaint, contending that plaintiff has no cause of action under the Consumer Product Safety Act, and that the claim under the Act was barred by the statute of limitations. The trial court granted plaintiff leave to amend her complaint, but certified the issues raised by the amendment to the Court of Appeals. The Court of Appeals affirmed. *Swenson v. The Emerson Electric Co.*, 356 N.W.2d 313 (Minn.App.1984). We granted review and now affirm the decision of the Court of Appeals.

In September of 1977, Edward Swenson acquired a Mark I Glasscote water heater designed, manufactured, and distributed by, defendant A.O. Smith Corporation. The water heater was equipped with a gas control valve, or thermostat, manufactured by defendant Emerson Electric Company. Swenson placed the water heater in his residence. On September 10, 1979, Swenson was attempting to relight the pilot light on the water heater when an explosion and flash fire occurred. The explosion and fire severely injured Swenson. He died on September 21, 1979.

Plaintiff commenced this action on April 10, 1981, alleging that a defect in the water heater and thermostat permitted LP gas to escape from the gas control valve. This gas, ignited when Edward Swenson tried to light the pilot light, caused the explosion and fire which resulted in his death. Plaintiff Janet Swenson, decedent's wife, sued defendants A.O. Smith Corporation and Emerson Electric Company for damages based upon negligence in design and manufacture of the water heater, negligent failure to warn of the defect, breach of the implied warranties of merchantability and fitness, and strict liability. Plaintiff also sought punitive damages, alleging that defendants acted with willful indifference to the rights and safety of others.

Plaintiff filed an amended complaint on March 17, 1982, with the consent of the defendants. On June 14, 1983, plaintiff moved for leave to file a second amended complaint. In the second amended complaint, plaintiff expanded upon her claim for punitive damages, clarified her strict liability claim, and sought to add to the complaint a claim for damages under the federal Consumer Product Safety Act. Defendants Emerson and Smith opposed the motion for leave to file the second amended complaint on the grounds that plaintiff has no cause of action under the Consumer Product Safety Act, and that the claim under the Act was barred by the statute of limitations.

The trial court granted plaintiff leave to file the second amended complaint on November 22, 1983. Defendants thereafter filed a motion to dismiss the punitive damages claim and the claim based upon the Consumer Product Safety Act, renewing their contentions that the plaintiff did not have a cause of action under the Act and that the statute of limitations barred assertion of the claim. In the alternative, defendants asked the trial court to certify the issues raised to the Court of Appeals. On January 31, 1984, the trial court denied the motion to dismiss in all respects, but certified the issues raised by defendants to the Court of Appeals as important and doubtful.

Three questions were certified to the Court of Appeals:

1. Does Section 23 of the Consumer Products Safety Act, 15 U.S.C. § 2072, provide a private right of action for violation of the non-binding interpretive regulation issued by the Consumer Products Safety Commission at 16 CFR Part 1115?

2. Does the Section 23 claim asserted in Plaintiff's Second Amended Complaint arise out of the "same transaction or occurrence" that is the subject of Plain-

tiff's original claims, within the meaning of Rule 15.03 of the Minnesota Rules of Civil Procedure, so that Plaintiff's untimely filing of the CPSA claim is made timely by application of the Minnesota Relation-Back Doctrine?

3. Does Subdivision 4 of Minnesota Statutes § 573.02, as amended by Chapter 347 of Laws of Minnesota for 1983, have retroactive application to Wrongful Death lawsuits which do not result from an intentional act constituting murder, so that Plaintiff should be permitted to seek punitive damages in this case arising out of an occurrence in 1979?

The Court of Appeals ruled that the alleged violation of the substantial product hazard reporting regulations arose out of the same transaction or occurrence as plaintiff's original claims, and was therefore not barred by the statute of limitations because of the relation-back doctrine. The Court of Appeals also held that an allegation of violation of the substantial product hazard reporting regulations of the Consumer Product Safety Commission constitutes a claim for which there is a private cause of action under the Consumer Product Safety Act.[1]

1. The Consumer Product Safety Act (CPSA), 15 U.S.C. § 2051 *et seq.* (1982), contains no limitations period for the commencement of actions. Where federal law does not specify a statute of limitations, the Supreme Court has said:

[W]e do not ordinarily assume that Congress intended that there be no time limit on actions at all; rather, our task is to 'borrow' the most suitable statute or other rule of timeliness from some other source. We have generally concluded that Congress intended that the courts apply the most closely analogous statute of limitations under state law.

*DelCostello v. International Bhd. of Teamsters,* 462 U.S. 151, 158, 103 S.Ct.

2281, 2287, 76 L.Ed.2d 476 (1983). The Court, however,

has not mechanically applied a state statute of limitations simply because a limitations period is absent from the federal statute. State legislatures do not devise their limitations periods with national interests in mind, and it is the duty of the federal courts to assure that the importation of state law will not frustrate or interfere with the implementation of national policies. 'Although state law is our primary guide in this area, it is not, to be sure, our exclusive guide.'

*Occidental Life Ins. Co. v. Equal Employment Opportunity Comm'n,* 432 U.S. 355, 367, 97 S.Ct. 2447, 2454, 53 L.Ed.2d 402 (1977) (quoting *Johnson v. Railway Express Agency, Inc.,* 421 U.S. 454, 465, 95 S.Ct. 1716, 1722, 44 L.Ed.2d 295 (1975)). In *Occidental,* the Court found that state statutes of limitation would not apply to enforcement actions brought by the EEOC under Title VII of the Civil Rights Act of 1964 because Congress had created an administrative body, the EEOC, whose function was to investigate and, hopefully, settle disputes prior to the commencement of litigation. Analogous state statutes of limitation, not enacted with such a potentially lengthy administrative process in mind, were found to frustrate Congress' intent in establishing the EEOC procedure. *Id.* 432 U.S. at 368–69, 97 S.Ct. at 2455–56 (Court overturned district court decision applying California's 1-year limitations period to the EEOC action).

In the present case, Congress created a private right of action for damages in certain circumstances, for persons injured "by reason of any knowing (including willful) violation of a consumer product safety rule, or any other rule or order issued by the Commission." 15 U.S.C. § 2072(a) (1982). Congress specifically provided that this remedy "shall be in addition to and not in lieu of any other remedies provided by common law or under Federal

---

**1.** The Court of Appeals also ruled that a 1983 amendment to the wrongful death statute, permitting punitive damages in wrongful death actions, Act of June 14, 1983, ch. 347, §§ 2, 3, 1983 Minn.Laws 2397, 2397–98, did not have retroactive effect and thus did not apply to the present case. Plaintiff has not challenged this ruling on her appeal to this court.

or State law." *Id.* § 2072(c). It appears that Congress intended the right of action under section 2072 to be simply another source of liability in addition to the typical claims which arise from injuries caused by consumer products: negligence, breach of warranty, and strict liability. Since the cause of action under the CPSA would arise from the same occurrences that give rise to liability under state common law, and there is no apparent overriding federal need for a uniform limitations period, the decision of the trial court and the Court of Appeals that the analogous state statute of limitations applies, was proper. *Cf. McAllister v. Magnolia Petroleum Co.*, 357 U.S. 221, 224–26, 78 S.Ct. 1201, 1203–04, 2 L.Ed.2d 1272 (1958) (applying federal limitations period of Jones Act to a seaworthiness action under general admiralty law because the two claims are almost always brought together; solution thought to comport with "practicalities of admiralty personal injury litigation").

The trial court ruled, and both parties agree, that the wrongful death statute, Minn.Stat. § 573.02, subd. 1 (1984), is the source of the appropriate limitations period. That statute provides that actions must be commenced "within three years after the date of death." Edward Swenson died on September 21, 1979. Plaintiff's motion for leave to file a second amended complaint, which included for the first time the claim under the Consumer Product Safety Act, was made in June of 1983, 3 years and 9 months after Edward Swenson's death. The claim under the CPSA would thus be barred by the statute of limitations unless we find that it "relates back" to the date of the original complaint pursuant to Minn.R.Civ.P. 15.03. Rule 15.03 provides:

> Whenever the claim or defense asserted in the amended pleading arose out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading, the amendment relates back to the date of the original pleading.

Defendants assert that Rule 15.03 is based on "the concept that a party who has been notified of claims concerning a given transaction has been given the notice that statutes of limitations are intended to afford." Thus, defendants conclude, an amendment stating a new cause of action will not relate back to the original complaint if that complaint did not sufficiently notify the defendants of the transaction or occurrence upon which the new claim is based. Defendants then argue that the claim under the CPSA is so different from the other claims advanced by the plaintiff in the original complaint that the amendment to include the CPSA claim should not be permitted to relate back to the original complaint.

Plaintiff's original complaint asserted that defendants were liable for the death of Edward Swenson on theories of negligence in design and manufacture of the water heater, negligent failure to warn of a defective condition in the product, breach of the implied warranties of merchantability and fitness, and strict liability. The new claim seeks to establish liability for damages based upon defendants' allegedly intentional failure to report to the Consumer Product Safety Commission a defect in its product which it had a reasonable basis to believe may present a "substantial product hazard," in violation of 15 U.S.C. § 2064(b) (1982).

Plaintiff argues that the causes of action in the original complaint and the cause of action under the CPSA that she now seeks to assert both arose out of the same occurrence: Edward Swenson's death. Plaintiff points out that 15 U.S.C. § 2072 requires the existence of an injury as a prerequisite to an action for damages. Plaintiff further argues that the original complaint put defendants on notice that they would have to defend themselves on the very issues involved in the CPSA claim: the alleged defect in their product and defendants' knowledge or lack of knowledge of that defect prior to the explosion that killed Edward Swenson.

Defendants contend, however, that the CPSA claim is sufficiently different from the claims in the original complaint to pre-

clude application of the relation-back doctrine. Defendants point out that the CPSA claim involves their understanding of and compliance with Consumer Product Safety Commission (CPSC) rules, requiring examination of the relationship between defendants and the CPSC, not the relationship between defendants and the decedent.

The trial court found that the plaintiff's CPSA claim "relates back to the explosion and is, therefore, not barred by the statute." The Court of Appeals affirmed the trial court's resolution of the issue, finding that the "negligent failure to provide [warning of a product defect] claim is directly related to the alleged violation of the Act and corresponding regulation, namely the failure to report substantial product hazards." The Court of Appeals concluded that, because "appellants had notice of the conduct asserted in the amendment," the amendment related back to the original complaint and was therefore not barred by the statute of limitations.

This court has said that—

The principle of relation back of amended pleadings existed in prior law, but it was limited to an amendment which did not state a new cause of action. The harshness of the rule was modified by a liberal construction of a 'cause of action.' In accord with this liberal application of the principle, the rule requires only that the amendment arise out of the 'conduct, transaction, or occurrence' set forth in the original pleading.

*Heyn v. Braun*, 239 Minn. 496, 501–02, 59 N.W.2d 326, 330 (1953). In *Heyn*, a mechanics lien case, the original complaint was based upon a written contract to which one of the named defendants was not a party. After the statute of limitations had run and at the opening of trial, the plaintiff amended his complaint to include a claim for the fair and reasonable value of the improvements, which cause of action could be asserted against the owner-defendant who was not a party to the contract. This court held that the relation-back doctrine applied to preserve the new claim despite the running of the limitations period "even

though it set forth a new cause." *Id.* at 502, 59 N.W.2d at 330.

■ The policy of statutes of limitation is to "compel the exercise of a right of action within a reasonable time so that a defendant will have a fair opportunity to prepare an adequate defense." Note, *Federal Rule of Civil Procedure 15(c): Relation Back of Amendments*, 57 Minn.L.Rev. 83, 84 (1972). In the present case, defendants had sufficient notice in the original complaint of the essential elements of the CPSA claim to justify application of the relation-back doctrine and therefore to prevent the claim from being barred by the statute of limitations. Defendants were clearly notified in the original complaint of the accident and injury giving rise to the CPSA claim. Defendants were also put on notice that plaintiff was going to assert that the water heater was defective and that defendants knew of the defect and negligently failed to warn consumers of it. The CPSA claim requires plaintiff to prove that the water heater was defective, that the defect created a hazard, that defendants knew of the defect, and that defendants knowingly violated the CPSC rule requiring defendants to notify the CPSC of any known hazardous defects in a consumer product. Only the allegation that defendants knowingly violated the CPSC reporting requirement was not essentially present in the original complaint. We conclude that plaintiff's late assertion of the CPSA claim did not infringe upon defendants' preparation of an adequate defense. We therefore rule that the plaintiff's claim under the CPSA is not barred by the statute of limitations because it relates back to the original pleading.

2. The Consumer Product Safety Act provides a private cause of action at 15 U.S.C. § 2072(a) (1982):

Any person who shall sustain injury by reason of any knowing (including willful) violation of a consumer product safety rule, or any other rule or order issued by the Commission may sue any person who knowingly (including willfully) violated any such rule or order in any district

court of the United States in the district in which the defendant resides or is found or has an agent * * *.

As an initial matter, the statutory language in section 2072 providing that an injured party may sue in any federal district court for violation of the CPSA, does not appear to be a grant of exclusive federal jurisdiction over CPSA claims. As the Supreme Court has stated:

> The general principle of state-court jurisdiction over cases arising under federal laws is straightforward: state courts may assume subject-matter jurisdiction over a federal cause of action absent provision by Congress to the contrary or disabling incompatibility between the federal claim and state-court adjudication. * * *
>
> In considering the propriety of state-court jurisdiction over any particular federal claim, the Court begins with the presumption that state courts enjoy concurrent jurisdiction. * * * [T]he presumption of concurrent jurisdiction can be rebutted by an explicit statutory directive, by unmistakable implication from legislative history, or by a clear incompatibility between state-court jurisdiction and federal interests. * * *
>
> * * * * * *
>
> * * * It is black-letter law * * * that the mere grant of jurisdiction to a federal court does not operate to oust a state court from concurrent jurisdiction over the cause of action.

*Gulf Offshore Co. v. Mobil Oil Corp.*, 453 U.S. 473, 477–79, 101 S.Ct. 2870, 2874–75, 69 L.Ed.2d 784 (1981) (Court held that federal courts do not have exclusive jurisdiction over personal injury cases arising under the Outer Continental Shelf Lands Act despite a provision in the act granting federal district courts "original jurisdiction" over cases arising under it).

■ Section 2072 contains no explicit grant of exclusive jurisdiction to the federal courts. Our review of the legislative history of the CPSA does not reveal any consideration of the jurisdictional question. *See* H.R.Rep. No. 92–1153, 92d Cong., 2d Sess. 46–49 (1972); S.Rep. No. 92–835, 92d Cong., 2d Sess., *reprinted in* 1972 U.S. Code Cong. & Ad.News 4573; Conf.Rep. No. 92–1593, 92d Cong., 2d Sess., *reprinted in* 1972 U.S.Code Cong. & Ad.News 4596, 4647–50. Finally, it is unlikely that Congress intended federal courts to have exclusive jurisdiction over private actions under the CPSA because most actions in which CPSA claims are asserted would also include claims of state common law violations such as negligence, breach of warranty, and strict product liability. Any intent by Congress to require all of these actions to be brought in federal courts would have to be explicit. We therefore conclude that state and federal courts possess concurrent jurisdiction over private causes of action under the CPSA.

■ Section 2072(a) provides a private cause of action for any person injured by a knowing "violation of a consumer product safety rule, or any other rule or order issued by the Commission." 15 U.S.C. § 2064(b) provides that:

> Every manufacturer of a consumer product distributed in commerce, and every distributor and retailer of such product, who obtains information which reasonably supports the conclusion that such product—
>
> (1) fails to comply with an applicable consumer product safety rule; or
>
> (2) contains a defect which could create a substantial product hazard described in subsection (a)(2) of this section, shall immediately inform the Commission of such failure to comply or of such defect, unless such manufacturer, distributor, or retailer has actual knowledge that the Commission has been adequately informed of such defect or failure to comply.

15 U.S.C. § 2064(a)(2) defines "substantial product hazard" as

> a product defect which (because of the pattern of defect, the number of defective products distributed in commerce, the severity of the risk, or otherwise) creates a substantial risk of injury to the public.

The CPSC did not promulgate a substantive rule under section 2064 of the CPSA. Instead, the CPSC promulgated an interpretive rule describing its views of manufacturers' obligations under section 2064.[2] *See* 43 Fed.Reg. 34,988 (1978), *codified at* 16 C.F.R. § 1115.1–.22 (1985).

In introducing the interpretive rule, the CPSC said:

The Commission considered the difference between promulgating the rule as substantive or interpretive, sought public comment on the issue * * * and has decided to promulgate the rule as interpretive.

A substantive rule has the force and effect of law. Thus, a violation of a substantive rule under the CPSA is equivalent to a violation of the CPSA. In contrast, an interpretive rule offers guidance as to what a law means, but does not itself have the force and effect of law. A violation of an interpretive rule is not necessarily a violation of law; the failure to comply with an interpretive rule *is* a violation of the law under which it is issued only if the rule reasonably interprets that law. In issuing these rules under section 15 of the CPSA, the Commission believes it has reasonably interpreted the provisions and obligations of that section. However, a firm charged with violating section 15 through acts which are contrary to these rules will always have an opportunity to urge the reasonableness of its actions under the circumstances, thereby defeating the accusation.

The Commission agrees with the consumer commentators who stated that the Commission could address the issues of its authority and the desirability of issuing a substantive regulation at a later date. They indicated that an interpretive regulation will serve a dual purpose: It will put subject firms fairly on notice of the Commission's view of the law, and it will give the Commission an opportunity to assess the reasonableness and effectiveness of this rule. The Commission agrees and is, therefore, issuing this rule as an interpretation of section 15.

43 Fed.Reg. 34,988, 34,990 (1978).

The issue presented in this case is whether an alleged violation of the interpretive

---

**2.** A rule is characterized as interpretive, rather than legislative, if it is not issued pursuant to a legislative delegation of power to make rules having the force of law *or* if the agency intends the rule to be no more than its interpretation of a statute or another rule. *General Motors Corp. v. Ruckelshaus,* 724 F.2d 979, 985 (D.C.Cir. 1983); *American Postal Workers Union v. United States Postal Serv.,* 707 F.2d 548, 558 (D.C.Cir. 1983); *Chamber of Commerce v. Occupational Safety and Health Admin.,* 636 F.2d 464, 468 (D.C.Cir.1980); *Joseph v. United States Civil Serv. Comm'n,* 554 F.2d 1140, 1153 (D.C.Cir. 1977). An agency's characterization of a rule as interpretive or legislative, particularly if made at the time of the rule's promulgation, is accorded deference by the courts, but is not dispositive. *Ruckelshaus,* 747 F.2d at 985; *Levesque v. Block,* 723 F.2d 175, 180–81 (1st Cir.1983); *American Postal Workers,* 707 F.2d at 559; *Chamber of Commerce,* 636 F.2d at 468; *Citizens to Save Spencer County v. United States Envtl. Protection Agency,* 600 F.2d 844, 879 n. 171 (D.C.Cir.1979) (" '[T]he label that the particular agency puts upon its given exercise of administrative power is not, for our purposes, conclusive; rather it is what the agency does in fact.' * * * This must especially be true when the label is placed on the agency's rule by counsel after the rule is promulgated in final form and the rule is undergoing court review"). A court will reject an agency's characterization of a rule as interpretive when the court determines that the agency intended to promulgate a legislative rule, did not follow the notice and comment procedures required for promulgation of a valid legislative rule, and later attempts to "save" the deficient rule by characterizing the rule as interpretive, and thus exempt from, the notice and comment procedure of 5 U.S.C. § 553(c) (1982). *See Levesque,* 723 F.2d at 181–84; *Chamber of Commerce,* 636 F.2d at 468–70; *Citizens to Save Spencer County,* 600 F.2d at 879 & n. 171; *Joseph,* 554 F.2d at 1152–54.

We find that the CPSC's substantial product hazard reporting regulations are properly characterized as interpretive rules. The CPSC clearly indicated its intent to promulgate the rules as interpretive, and continues to consider them to be interpretive. *See* 43 Fed.Reg. 34,988, 34,990 (1978); 49 Fed.Reg. 13820 (1984). Also, because the CPSC promulgated the substantial product hazard reporting regulations after following notice and comment procedures, 43 Fed. Reg. 34,988 (1978), the rules were obviously not characterized as interpretive as a device to avoid following that procedure. The substantial product hazard reporting regulations are, therefore, interpretive rules.

rule promulgated to clarify the requirements of section 2064 of the CPSA states a cause of action under section 2072 of the CPSA. The trial court followed *Young v. Robertshaw Controls Co.*, 560 F.Supp. 288 (N.D.N.Y.1983), in ruling that such an action was permitted by section 2072. The Court of Appeals agreed, basing its ruling on the plain language of section 2072. The Court of Appeals noted that section 2072 provides a private cause of action for knowing violation of a consumer product safety rule or "any other rule or order issued by the Commission." The federal Administrative Procedure Act defines "rule" as—

> the whole or a part of an agency statement of general or particular applicability and future effect designed to implement, interpret, or prescribe law or policy or describing the organization, procedure, or practice requirements of an agency * * *.

5 U.S.C. § 551(4) (1982). Because the interpretive rule codified at 16 C.F.R. § 1115.1–.22 interprets section 2064 of the CPSA, the Court of Appeals held that it is a "rule issued by the Commission," as "rule" is defined in the Administrative Procedure Act, and that a private cause of action under section 2072 can therefore be asserted for violation of it. The Court of Appeals also relied upon federal precedent for recognition of such a cause of action under section 2072.

We agree with the trial court and the Court of Appeals and therefore hold that section 2072 of the federal Consumer Product Safety Act provides a private cause of action for violation of the Consumer Product Safety Commission's substantial product hazard reporting regulations, codified at 16 C.F.R. § 1115.1–.22. We base our holding on the plain language of section 2072, the relevant federal precedent, and general principles of federal administrative law.

 Our first task in interpreting a statute is simply to examine the language of the statute and, "[a]bsent a clearly expressed legislative intention to the contrary, that language must ordinarily be regarded as conclusive." *Consumer Prod. Safety Comm'n v. GTE Sylvania, Inc.*, 447 U.S. 102, 108, 100 S.Ct. 2051, 2056, 64 L.Ed.2d 766 (1980). Section 2072 provides a private cause of action to any person injured by a knowing "violation of a consumer product safety rule, or any other rule or order issued by the Commission." 15 U.S.C. § 2072(a). The CPSA defines a "consumer product safety rule" as a rule which establishes performance or labeling requirements for a product or which bans a product as hazardous. 15 U.S.C. §§ 2052(a)(2), 2056(a). The CPSA does not define "rule" as used in the phrase "any other rule or order issued by the Commission." We therefore construe the statute literally and conclude that violation of "*any* other rule * * * issued by the Commission" gives rise to a private right of action under section 2072. Because the definition of "rule" in the federal Administrative Procedure Act includes interpretive rules, *see* 5 U.S.C. § 551(4), violation of an interpretive rule issued by the CPSC, such as the substantial product hazard reporting regulations at issue in this case, gives rise to a private right of action under the plain language of section 2072. The legislative history of the CPSA reflects no attempt to define "rule" as used in section 2072, and contains no discussion of the distinction between substantive and interpretive rules. *See* H.R.Rep. No. 92–1153, 92d Cong., 2d Sess. 47–48 (1972); S.Rep. No. 92–835, 92d Cong., 2d Sess., *reprinted in* 1972 U.S. Code Cong. & Ad.News 4573; Conf.Rep. No. 92–1593, 92d Cong., 2d Sess., *reprinted in* 1972 U.S.Code Cong. & Ad.News 4596, 4650. We therefore find no "clearly expressed legislative intention" that contradicts the plain meaning of section 2072.

Our conclusion is supported by a majority of the federal courts that have ruled on this issue. A private cause of action for noncompliance with the substantial product hazard reporting regulations was first recognized in *Butcher v. Robertshaw Controls Co.*, 550 F.Supp. 692 (D.Md.1981). *Butcher* involved a suit over injury sustained by the explosion of a water heater.

Plaintiff sought to recover damages based upon allegations of fraud, negligence, and strict liability. Plaintiff also asserted a claim under the CPSA, alleging that the defendant manufacturer violated the CPSC's substantial product hazard reporting regulations. The court noted that the CPSC is authorized to promulgate two types of rules under the CPSA, "consumer product safety rules" and administrative rules. Consumer product safety rules are designed to prohibit the manufacture and sale of dangerous products; administrative rules aid the CPSC in the promulgation of consumer product safety rules by mandating disclosure of product defects. *Id.* at 695–96. The court then considered the language of section 2072, which provides a private cause of action for a knowing violation of a consumer product safety rule *or* "any other rule or order issued by the Commission." Since Congress did not limit the private cause of action to violations of consumer product safety rules, the court concluded that a violation of a disclosure rule was actionable under section 2072. *Id.* at 698–99.

In *Young v. Robertshaw Controls Co.,* 560 F.Supp. 288, a second federal district court upheld the result reached in *Butcher.* The plaintiff in *Young* was seeking to recover damages for the death of her husband as a result of the explosion of a water heater in their home. The court noted that the substantial product hazard reporting regulation interprets the manufacturer's statutory duty to disclose substantial product hazards. The court held that this rule fit the language "any other rule or order of the Commission," and that its violation was therefore actionable under section 2072. The court noted that an interpretive rule is included in the definition of "rule" in the federal Administrative Procedure Act and that section 2072 contains no indication that Congress meant to exclude interpretive rules from "rule" as used in section 2072. *Id.* at 292–93 & n. 8. Three other federal district courts have followed the holdings of *Butcher* and *Young.* *See Drake v. Lochinvar Water Heater, Inc.,* No. 3–83 CIV 663, slip. op. at 5–8, —

F.Supp. ——, ——————— (D.Minn. March 21, 1985) (this decision was certified to the Eighth Circuit Court of Appeals on April 26, 1985); *Wilson v. Robertshaw Controls Co.,* 600 F.Supp. 671, 673–75 (N.D.Ind. 1985); *Payne v. A.O. Smith Corp.,* 578 F.Supp. 733, 738 (S.D.Ohio 1983).

One federal district court has held that section 2072 of the CPSA does not grant a private cause of action for violation of the interpretive rule governing disclosure of substantial product hazards. *Kahn v. Sears Roebuck and Co.,* 607 F.Supp. 957 (N.D.Ga.1985). In *Kahn,* the court rejected the reasoning in *Butcher, supra,* and *Young, supra,* and found that *Morris v. Coleco Indus.,* 587 F.Supp. 8 (E.D.Va. 1984), "provides the better rule." In *Morris,* the court found that there is no private action under section 2072 for an asserted violation of section 2064 of the CPSA. Section 2064 requires a manufacturer to report to the CPSC any information it obtains that reasonably supports the conclusion that its product contains a defect which could create a substantial product hazard. The *Morris* court ruled that:

> Specific provisions dealing with a failure to report are contained in the Act. Sections 2069 and 2070 provide civil and criminal penalties as a means for enforcing the disclosure requirements of § 2064. *Further, the requirement to disclose is not a requirement based upon a rule or order of the Commission.* It is a requirement predicated upon the statute itself.

*Id.* at 9 (emphasis added). *Morris,* in contrast to the present case, did not involve an alleged violation of the interpretive rule promulgated to explain section 2064, but an alleged violation of the statute itself. Section 2072 does not have language allowing a private action for violation of the statute, but only for violation of rules promulgated under the statute. *Morris,* therefore, is not contrary to *Butcher, Young,* and the line of cases following their reasoning. The *Kahn* court relied on *Morris,* which is distinguishable, to hold that section 2072 authorizes a private cause of action only

for violation of a substantive CPSC rule, and not for violation of a CPSC interpretive rule. We therefore decline to adopt the *Kahn* holding and follow instead the majority of the federal courts which have ruled on this issue. We note that the two courts which have provided the most detailed analysis of the issue have ruled that section 2072 allows the private cause of action that plaintiff Swenson seeks to assert here. *See Young*, 560 F.Supp. at 291–93; *Butcher*, 550 F.Supp. at 694–99.

Defendants Emerson and Smith assert that, despite the apparent plain meaning of section 2072 and despite the rulings of several federal courts that section 2072 grants a private cause of action for violation of the interpretive rule regarding disclosure of substantial product hazards, recognition of such a cause of action is contrary to "fundamental principles of administrative law" and would lead to absurd results. Defendants argue that interpretive rules do not have the force and effect of law, are therefore not binding regulations, and thus cannot be "violated" for purposes of giving rise to a cause of action under section 2072. Defendants also argue that allowing private parties to sue for damages for violation of interpretive rules would improperly convert interpretive rules into substantive, binding rules. Defendants assert that recognition of the private cause of action plaintiff seeks would be illogical because private litigants would then be allowed to enforce a CPSC rule that the CPSC itself could not enforce. Finally, defendants contend that because an interpretive rule is not itself binding, violation of an interpretive rule is really a violation only of the statute the rule interprets. Defendants note that section 2072 does not provide a private right of action for violation of the CPSA itself, but only for violation of consumer product safety rules and "any other rule or order issued by the Commission."

The argument advanced by the defendants hinges on the assumption that interpretive rules, unlike legislative rules, do not create binding obligations. This assumption reflects an incorrect understanding of the distinction between legislative and interpretive rules in federal administrative law. Both legislative and interpretive rules can be invalidated by the courts; both legislative and interpretive rules can be held valid by the courts. If valid, the rule has binding effect. *See, e.g., Batterton v. Francis*, 432 U.S. 416, 97 S.Ct. 2399, 53 L.Ed.2d 448 (1977) (Court upheld a legislative rule); *American Postal Workers Union v. United States Postal Serv.*, 707 F.2d 548 (D.C.Cir.1983) (court upheld an interpretive rule as valid and permitted agency to follow it in administering its responsibilities under the statute); *Cerro Metal Prods. v. Marshall*, 620 F.2d 964 (3d. Cir.1980) (court invalidated an interpretive rule); *Joseph v. United States Civil Serv. Comm'n*, 554 F.2d 1140 (D.C. Cir.1977) (court invalidated a legislative rule for procedural deficiencies in its promulgation).

The distinction between legislative and interpretive rules in federal administrative law is the scope of review used by the courts in assessing their validity:

> Legislative rules are said to have the 'force and effect of law'—*i.e.*, they are as binding on the courts as any statute enacted by Congress. * * * 'A reviewing court is not free to set aside those regulations simply because it would have interpreted the statute in a different manner.' * * * Legislative rules are valid so long as they are reasonably related to the purposes of the enabling legislation, * * * promulgated in compliance with statutory procedures, * * * and not arbitrary or capricious. * * * Interpretive rules, in contrast, have only persuasive force. Such rules are entitled to varying degrees of deference or weight, but a reviewing court ordinarily is free to substitute its own view of the relevant statute.

*Production Tool Corp. v. Employment and Training Admin.*, 688 F.2d 1161, 1165 (7th Cir.1982). Interpretive rules,

> while not controlling upon the courts by reason of their authority, do constitute a body of experience and informed judg-

ment to which courts and litigants may properly resort for guidance. The weight of such a judgment in a particular case will depend upon the thoroughness evident in its consideration, the validity of its reasoning, its consistency with earlier and later pronouncements, and all those factors which give it power to persuade, if lacking power to control.

*Skidmore v. Swift & Co.*, 323 U.S. 134, 140, 65 S.Ct. 161, 89 L.Ed. 124 (1944).

■■■ Thus, when courts refer to legislative rules as having the "force and effect of law," they mean that the validity of legislative rules will be tested under a deferential scope of review that acknowledges their promulgation pursuant to a delegation of legislative power. The characterization of interpretive rules as *not* having "the force and effect of law" means that the courts do not accord these rules the deference that they accord a statute or legislative rule. Interpretive rules can be binding, but simply must survive closer scrutiny than legislative rules in order to be found valid and authoritative. Defendants' assertion that all interpretive rules are nonbinding is therefore incorrect:

> Interpretive rules sometimes have force of law and sometimes not. Interpretive rules cannot be binding on courts, like statutes, but courts, without being bound by them, may give them authoritative effect that equals or approximates force of law.

2 K. Davis, Administrative Law Treatise, § 7:13, at 59 (2d ed. 1979).

The theoretical basis for the differing scopes of review of legislative and interpretive rules is twofold. First,

> A legislative rule is the product of an exercise of delegated legislative power to make law through rules. An interpretive rule is any rule an agency issues without exercising delegated legislative power to make law through rules.

*Id.* § 7:8, at 36. Legislative rules receive more deference from the courts than interpretive rules because they are promulgated under authority delegated by Congress to an agency to make rules having the author-

ity of statutes. Second, the Administrative Procedure Act requires legislative rules to be promulgated using the notice and comment procedures outlined in 5 U.S.C. § 553 (1982). Interpretive rules are exempt from this requirement. 5 U.S.C. § 553(b)(A). As described by one court,

> The APA notice and comment procedures exist for good reason: to ensure that unelected administrators, who are not directly accountable to the populace, are forced to justify their quasi-legislative rulemaking before an informed and skeptical public.

*New Jersey v. Department of Health and Human Serv.*, 670 F.2d 1262, 1281 (3d Cir. 1981). Thus, because interpretive rules are not promulgated pursuant to delegated legislative power, and their promulgation need not follow the APA's notice and comment procedure, courts evaluate their validity under stricter standards than pertain to the review of legislative rules.

■■■ Courts examine a number of factors in determining the authoritative effect of an interpretive rule. The authoritative effect of an interpretive rule is enhanced if it represents a longstanding position of the agency and if it was promulgated near the time the agency's enabling act was passed. *General Electric Co. v. Gilbert*, 429 U.S. 125, 140–46, 97 S.Ct. 401, 410–413, 50 L.Ed.2d 343 (1976). An interpretive rule "is entitled to deference unless it can be said not to be a reasoned and supportable interpretation of the Act." *Whirlpool Corp. v. Marshall*, 445 U.S. 1, 11, 100 S.Ct. 883, 890, 63 L.Ed.2d 154 (1980). Thus, an interpretive rule will be given authoritative effect if it is a permissible gloss on the statute in light of the statute's language, structure, and legislative history. *Id.* An interpretive rule need not be the only reasonable interpretation of a statute to survive scrutiny, but cannot contradict the plain meaning of the statute and its legislative history. *Fmali Herb, Inc. v. Heckler*, 715 F.2d 1385, 1387 (9th Cir.1983). Added deference will be given to an interpretive rule promulgated according to the notice and comment procedures

of the Administrative Procedure Act. *Production Tool Corp.*, 688 F.2d at 1167.

■ We now examine the CPSC's substantial product hazard reporting regulations in light of these principles. The CPSA was designed to provide the federal government with "a major role in protecting the consumers from unreasonable risks of death, injury, or serious or frequent illness associated with the use or exposure to consumer products." H.R.Rep. No. 92–1153, 92d Cong., 2d Sess. 21 (1972). The CPSA was designed to set up an independent regulatory agency, the CPSC, to collect information on injuries related to consumer products, establish necessary safety standards for consumer products, and enforce compliance with those safety standards. *Id.* Prior to the enactment of the CPSA, a study of consumer product safety regulation found state and local laws to be a " 'hodgepodge of tragedy-inspired responses to challenges which cannot be met by restricted geographical entities.' " *Id.* at 23. Federal consumer product safety regulation prior to the CPSA was found to be

> burdened by unnecessary procedural obstacles, circumscribed investigative powers, inadequate and ill-fitting sanctions, bureaucratic lassitude, timid administration, bargain-basement budgets, distorted priorities, and mis-directed technical resources.

*Id.* at 22–23. It was also noted that there was "no central facility for the systematic collection and evaluation of injury data." *Id.* at 23. It was therefore recommended to Congress that the

> Federal Government should abandon its traditional case by case approach to product safety and consolidate in a single agency authority sufficient to regulate the full spectrum of products which are sold to or used by consumers.

*Id.* at 24. It was recommended that Congress establish a "new independent regulatory commission with comprehensive powers to minimize or eliminate unreasonably hazardous products." *Id.*

■ The Consumer Product Safety Act, enacted in 1972, established the Consumer Product Safety Commission as an independent regulatory commission. 15 U.S.C. § 2053(a) (1982). The purpose of establishing the CPSC was to "protect the public against unreasonable risks of injury associated with consumer products," "develop uniform safety standards for consumer products," and "promote research and investigation into the causes and prevention of product-related * * * injuries." *Id.* § 2051(b). The CPSC was instructed to establish an Injury Information Clearinghouse for the collection and analysis of injury data. *Id.* § 2054(a)(1). The CPSA required manufacturers, distributors, and retailers to report to the CPSC any information they obtain which "reasonably supports the conclusion" that a consumer product contains a "defect which could create a substantial product hazard." *Id.* § 2064(b). If the CPSC determines that the product defect reported presents a substantial product hazard, it can require a manufacturer, distributor, or retailer to notify the general public of the defect; notify the consumers of the product of the defect; order that the defect be repaired; order the product replaced with a safe product; or order refund of the purchase price of the product. *Id.* § 2064(c)–(d).

The CPSC is empowered by the Act to promulgate consumer product safety rules expressed either in terms of performance requirements or warning requirements. *Id.* § 2056(a). If the CPSC determines that a product presents an unreasonable risk of injury which cannot not be cured by a feasible consumer product safety rule, it may promulgate a rule declaring the product a banned hazardous product. *Id.* § 2057. If the CPSC determines that a product presents "unreasonable risk of death, serious illness, or severe personal injury," it may file an action in court to seize the product as an "imminently hazardous consumer product." *Id.* § 2061(a). Failure to properly disclose product defects which could create a substantial product hazard, or failure to comply with a consumer product safety rule, subjects a manufac-

turer, distributor, or retailer to civil or criminal penalties. *See id.* §§ 2068, 2069, 2070.

The disclosure requirements imposed by the CPSA upon manufacturers, distributors, and retailers are crucial to the attainment of the CPSA's primary goal: the protection of consumers. As the CPSC has said:

[substantial product hazard] reports enable the Commission to obtain information at an early stage from knowledgeable sources * * *. These reports provide a key basis for evaluating a potential hazard and the need, if any, for corrective action in the form of public notice and/or recall, repair or replacement of the product * * * or the possible need for rulemaking or voluntary standards efforts.

49 Fed.Reg. 13820 (1984). The CPSC can protect consumers from dangerous consumer products only if product hazards are brought to its attention.

The substantial product hazard reporting regulation, codified at 16 C.F.R. § 1115.-1–.15 (1985), was published as a proposed rule in 1977. 42 Fed.Reg. 46720 (1977). The CPSC followed notice and comment procedures and held two public hearings on the rule before issuing it as an interpretive rule in 1978. 43 Fed.Reg. 34,988 (1978). The reporting rule provides manufacturers a 10-day time period to conduct a "reasonably expeditious investigation in order to evaluate the reportability of a death or grievous bodily injury or other information." 16 C.F.R. § 1115.14(d). Once the manufacturer's investigation reveals "information which reasonably supports the conclusion that [its consumer] product fails to comply with an applicable consumer product safety rule or contains a defect which could create a substantial product [hazard]," the manufacturer has 24 hours to report to the CPSC, by telephone or in writing, the name of the product, the nature of the defect, and the nature of the risk of injury associated with the product. *Id.* §§ 1115.13(c), 1115.14(c), (e). After the initial report, a more detailed full report must be filed with the CPSC. *Id.* § 1115.-13(d).

The rule then defines a product "defect" as a:

fault, flaw, or irregularity that causes weakness, failure, or inadequacy in form or function. A defect, for example, may be the result of a manufacturing or production error; that is, the consumer product as manufactured is not in the form intended by, or fails to perform in accordance with, its design. * * * [A] product may contain a defect even if the product is manufactured exactly in accordance with its design and specifications, if the design presents a risk of injury to the public. * * * A defect can also occur in a product's contents, construction, finish, packaging, warnings, and/or instructions. With respect to instructions, a consumer product may contain a defect if the instructions for assembly or use could allow the product, otherwise safely designed and manufactured, to present a risk of injury.

*Id.* § 1115.4. If the manufacturer discovers information reasonably supporting the conclusion that a product defect exists, the manufacturer must then assess whether the defect could create a substantial product hazard. *Id.* If the defect *could* present such a hazard, a timely report of the potential hazard must be made to the CPSC. *Id.*

It is apparent that several factors support giving the substantial product hazard reporting regulations authoritative effect. We note first that notice and comment procedures, not required for the promulgation of interpretive rules, were employed in the promulgation of the substantial product hazard reporting regulations, entitling the regulations to added deference. Also, in its adoption of the final regulations, the CPSC thoroughly summarized the views of the commentators on its proposed regulation, and carefully explained its reasoning in adopting or refusing to adopt changes in the regulation proposed by commentators. *See* 43 Fed.Reg. 34,988–98 (1979). The

thoroughness evident in the CPSC's consideration of the rule entitles it to greater weight.

Finally, the rule is a reasonable interpretation of the CPSA in light of the language of the disclosure provision and the structure and purposes of the CPSA. The CPSA was enacted with a broad remedial purpose: the protection of consumers from unreasonable risk of injury due to consumer products. The disclosure requirement of the CPSA is crucial to the attainment of the CPSA's purpose because it is the source of the information needed by the CPSC to identify dangerous consumer products and protect the public from them. We find the broad definition of defect in the substantial product hazard reporting regulations to be a reasonable interpretation of what must be reported to the CPSC. The short time limits for filing the initial report are also reasonable in light of the CPSC's need to protect the public as soon as possible from dangerous products and in light of the CPSC's power to seek a court order seizing products that pose imminent danger to the public. As the Court has said:

> In the absence of some contrary indication in the legislative history, the * * * regulation must be * * * upheld, particularly when it is to be remembered that safety legislation is to be liberally construed to effectuate the congressional purpose.

*Whirlpool Corp.,* 445 U.S. at 13, 100 S.Ct. at 891.

We conclude that a private party may maintain a cause of action under the Consumer Product Safety Act for alleged violation of the Consumer Product Safety Commission's substantial product hazard reporting regulations.

The decision of the Court of Appeals is affirmed.

COYNE, J., took no part in the consideration or decision of this case.