**Juanita NEVELS, Appellant,**

v.

**STATE of Minnesota, DEPARTMENT OF HUMAN SERVICES, et al.,
Respondents.**

**No. C1–98–1631.**

Court of Appeals of Minnesota.

Feb. 23, 1999.

---

Laurie Hanson, Legal Aid Society of Minneapolis, Minneapolis, for appellant.

Mike Hatch, Attorney General, Robert V. Sauer, Assistant Attorney General, St. Paul, for respondent State.

Amy Klobuchar, Hennepin County Attorney, Vicki Vial–Taylor, Assistant County Attorney, Minneapolis, for respondent Hennepin County.

Considered and decided by DAVIES, Presiding Judge, KLAPHAKE, Judge, and AMUNDSON, Judge.

## OPINION

KLAPHAKE, Judge

After respondent Hennepin County denied her application for retroactive Aid to Families with Dependent Children (AFDC) foster care benefits, appellant Juanita Nevels sought review from respondent Commissioner of the Department of Human Services. The commissioner modified the county's decision but also denied additional benefits during the time that Nevels and her granddaughter received basic AFDC. Nevels thereafter sought judicial review, and the district court entered summary judgment in favor of the commissioner's decision. Nevels now appeals to this court, claiming the federal agency's interpretation of the statute, as set out in a 1994 transmittal, be applied retroactively. We agree and affirm.

## FACTS

In January 1990, the county, through its child protective services, placed nine-month-old B.N. with Nevels, who is her grandmother. After three months, Nevels quit her job and applied for and received AFDC benefits. The foster placement lasted until October 1990, when the district court closed its file,

but B.N. continued to reside with Nevels. In 1996, Nevels applied for retroactive foster care benefits. The county and Nevels agreed that B.N. was entitled to receive foster care benefits for the nine-month placement period but could not agree on the amount of retroactive benefits owed Nevels.

During the foster placement, Nevels received $437 per month in basic AFDC benefits based on an assistance unit consisting of two persons. The child's portion of the grant was $187 and the adult's portion was $250. At that time, B.N. was entitled to receive an AFDC foster care benefit of $325 per month. Nevels argued that she was entitled to receive the $138 difference between the basic AFDC child's grant of $187 and the $325 foster care benefit that B.N. was entitled to receive.

While the county agreed that Nevels' calculation would be correct based on a February 28, 1994 Action Transmittal issued by the U.S. Department of Health and Human Services, Administration for Children & Families (the federal agency), it argued that it could not apply the transmittal retroactively to Nevels' 1990 benefits. The county denied further benefits, claiming that under its pre–1994 practice, Nevels was eligible to either receive basic AFDC benefits for herself and B.N. or receive foster care benefits for B.N. Because Nevels had received an amount of basic AFDC for an assistance unit of two that exceeded the child-only foster care benefit, the county determined Nevels was not entitled to additional benefits.

Nevels sought administrative review of the county's decision from the department of human services. Based on the parties' written submissions, a referee affirmed the county's denial of additional benefits for the six-month period during which Nevels received AFDC, but reversed the county's denial of benefits for the months that Nevels was working and not eligible for AFDC, ruling that the child was nevertheless eligible for $325 per month in AFDC foster care benefits. The commissioner adopted the referee's findings and conclusions, and Nevels sought judicial review. This appeal is from the district court's entry of summary judgment in favor of the commissioner's decision.

## ISSUE

Was the district court's grant of summary judgment based on an error of law? [1]

## ANALYSIS

■■■ When reviewing summary judgment, we determine whether there are any genuine issues of material fact and whether the lower court erred in its application of the law. *Offerdahl v. University of Minn. Hosps. & Clinics*, 426 N.W.2d 425, 427 (Minn.1988). When a district court reviews an agency decision, an appellate court need not defer to the district court's conclusions but will independently review the agency's record. *Dullard v. Minnesota Dept. of Human Servs.*, 529 N.W.2d 438, 442 (Minn.App. 1995). With no material facts in dispute, the district court failed to address the legal arguments, and made only the ultimate finding that the agency's prospective application of the transmittal was not arbitrary or capricious. Therefore, this court independently reviews the agency record and reviews the legal issues de novo. *Id.* A court may reverse an agency decision if the party seeking review establishes that the decision was "affected by [an] error of law" or "[u]nsupported by substantial evidence in view of the entire record as submitted." Minn.Stat. § 14.69(d), (e) (1998).

■■■ No party disputes that the 1994 transmittal correctly interprets the law and that Nevels' claim for additional benefits is supported by the transmittal. The transmittal was effective when issued and stated:

> Under prior AFDC policy, a relative who elected to receive foster care benefits for the only dependent child in the family was not considered *eligible* to receive AFDC benefits to meet his or her own needs. We have re-evaluated this position * * *.

> We now believe that when an application is made for AFDC for a household which includes a dependent child who is receiving

---

1. Nevels does not challenge that part of the judgment affirming the commissioner's modification giving B.N. retroactive foster care payments for the three months that Nevels was working and ineligible for AFDC for herself. That part of the district court's decision is therefore unaffected by our analysis of the legal issue.

* * * foster care maintenance payments, the presence of such a child must be taken into account for purposes of qualifying that family for AFDC.

(Emphasis added.) The commissioner concluded that the transmittal reflected a change in interpretation by the agency and also concluded:

> The reasons for not permitting retroactive application are not difficult to discern— there would be potentially thousands of claims for corrective payments in the millions of dollars nationwide, which could emanate from a decision to apply this policy to cases back ten years in the past * * *.

However, the record fails to support the commissioner's conclusions. There is no evidence that the county or commissioner will be inundated with millions of dollars of claims if the statutory interpretation expressed in the transmittal applies to Nevels. See Dullard, 529 N.W.2d at 442 (appellate court reviews agency record to see if conclusion is supported). Further, the county admitted that it knew of no earlier interpretation or rule that required a result contrary to the result supported by the transmittal. Although the transmittal refers to a "prior AFDC policy," it cites no earlier regulations, statutes, or transmittals that established such a prior policy.

Nevels argues that the issue is one of statutory interpretation and that the agency's decision to give the transmittal prospective application and the district court's affirmance of that decision were errors of law. The county and commissioner argue that their decision to rely on prior policy and apply the transmittal prospectively was within their discretion and not error.

The relevant statutory language, which was effective from 1986 until it was repealed in 1996, stated:

> (1) a child with respect to whom foster care maintenance payments * * * are made * * * shall not, for the period for which such payments are made, be regarded as a member of a family for purposes of

determining the amount of benefits * * *; and

> (2) the income and resources of such child shall be excluded from the income and resources of a family * * *.

42 U.S.C. § 609(a) (1994).[2]

■ The transmittal and any prior policy represent the agency's interpretation of this statute. An agency's interpretive rules, in contrast to properly promulgated legislative rules, are

> not controlling upon the courts [but] do constitute a body of experience and informed judgment to which courts and litigants may properly resort for guidance. The weight of such a judgment in a particular case will depend upon the thoroughness evident in its consideration, the validity of its reasoning, its consistency with earlier and later pronouncements, and all those factors which give it power to persuade, if lacking power to control.

Swenson v. Emerson Elec. Co., 374 N.W.2d 690, 701–02 (Minn.1985) (quoting Skidmore v. Swift & Co., 323 U.S. 134, 140, 65 S.Ct. 161, 164, 89 L.Ed. 124 (1944)). Nevertheless, an appellate court is not bound by the district court's or agency's legal conclusions, and its review of these legal issues is de novo. Dullard, 529 N.W.2d at 442. Under the standard expressed in Swenson, we agree with the statutory interpretation of the transmittal, but reject its prospective application. See Swenson, 374 N.W.2d at 702 (interpretive rule given authoritative effect if it is "permissible gloss on the statute," but may not contradict plain meaning of statute or legislative history).

The county and commissioner argue that section 609(a) was ambiguous and supported their interpretation barring AFDC eligibility for the relative caretaker when the only child in the household is eligible for foster care benefits. They rely on paragraph (1) to argue that if the foster child is not regarded as a member of the family and there is no other child in the assistance unit, the relative caretaker is ineligible for AFDC. They also rely

2. This statute was originally enacted in 1986 and later codified as 42 U.S.C. § 678 (1988). See Pub.L. No. 99–514, 100 Stat. 2917. In 1990, it was recodified as 42 U.S.C. § 609(a) (1994). See Pub.L. No. 101–508, 104 Stat. 1388–228. It was repealed in 1996. See Pub.L. No. 104–193, 100 Stat. 2112.

on legislative history to support their interpretation that section 609(a) applied to determine both eligibility and benefits. Nevels counters that section 609(a) did not determine eligibility but was limited to determining the amount of benefits.

▆ If the language of a statute is clear and unambiguous, legislative history may not be used to create an ambiguity. *See State v. Wetsch*, 511 N.W.2d 490, 492 (Minn.App. 1994), *review denied* (Minn. Apr. 19, 1994). The plain language of the statute excluded the foster child from the family "for purposes of determining the amount of benefits." It stated nothing about excluding the foster child for the purpose of determining eligibility for benefits. Because the statute was plain and unambiguous on this point, we need not consider the limited legislative history cited by the county and commissioner.

Furthermore, in 1990 the county did not dispute eligibility and concluded that B.N. and her grandmother were eligible for basic AFDC benefits. However, the county's interpretation of the statute forced Nevels to choose between her AFDC eligibility and B.N.'s eligibility for foster care benefits. Nothing in the statute supports that interpretation.

Moreover, the county's and commissioner's interpretation is contrary to congressional intent. *See Miller v. Youakim*, 440 U.S. 125, 145, 99 S.Ct. 957, 969, 59 L.Ed.2d 194 (1979) (holding that Illinois' policy of denying foster care payments to children who received basic AFDC payments while placed with relatives violated Congressional intent). In *Miller*, the Supreme Court noted that Congress recognized that state-supervised care and programs designed to meet the special needs of neglected children cost more than basic AFDC care. *Id.* at 142–43, 99 S.Ct. at 968. It further noted·that Congress intended to provide benefits in addition to basic AFDC "for children removed from an unsuitable

home by court order." *Id.* at 143, 99 S.Ct. at 968 (citation omitted).

While *Miller* did not address the specific situation presented here, its statement of congressional intent provides further support for our interpretation of the statute. The Illinois policy, rejected in *Miller*, required relative foster care providers to choose basic AFDC benefits by denying the children foster care benefits. *Id.* at 129, 99 S.Ct. at 961. Similarly, the county's and commissioner's interpretation here forced families such as Nevels', whose household included only the relative foster child, to choose basic AFDC benefits by denying eligibility to the caregiver if the child received foster care benefits. This result was criticized in *Miller* because the family is denied the added benefits Congress intended for the care of foster children. Thus, we conclude that the county's and commissioner's interpretation is contrary to Congressional intent. *See id.* at 134, 99 S.Ct. at 963.[3]

The issue here is one of statutory interpretation and we are not persuaded by respondents' reliance on an unwritten, unidentified prior policy. *See Swenson*, 374 N.W.2d at 701–02 (weight given to agency's interpretation of statute depends upon thoroughness of consideration, validity of reasoning, consistency with earlier and later pronouncements, and other factors giving power to persuade). The record contains no evidence of the existence of such a policy and therefore no evidence of the thoroughness of the agency's consideration or the validity of its reasoning. *Id.* Further, we need not defer to the transmittal's effective date. The record contains no evidence that supports limiting the correct statutory interpretation to prospective application after the 1994 transmittal. *Cf. Nardini v. Nardini*, 414 N.W.2d 184, 196 (Minn. 1987) (amendment clarifying statute may be retroactively applied). The statute remained unchanged from the time of its 1986 enact-

---

**3.** The county argues that recent Supreme Court decisions have retreated from *Miller's* presumption that the Social Security Act should be broadly construed and liberally applied. However, the cases cited by the county do not change Congress' intent to provide added benefits to children eligible for foster care payments. *See Anderson v. Edwards*, 514 U.S. 143, 115 S.Ct. 1291, 1299–1300, 131 L.Ed.2d 178 (1995) (af-

firming California regulation requiring all persons residing together to be counted in single assistance unit, resulting in reduced benefits for previously separate unrelated assistance units without consideration of foster care payments); *Wilkes v. Gomez*, 32 F.3d 1324, 1329 (8th Cir. 1994) (affirming similar Minnesota rule without consideration of foster care payments).

ment, and the record contains no earlier policy to convince us that it should be applied otherwise. *See Swenson*, 374 N.W.2d at 701–02 (when deciding persuasive value of agency interpretation, courts consider consistency with earlier and later pronouncements); *cf. Mitchell v. Steffen*, 487 N.W.2d 896, 907 (Minn.App.1992) (declining to prospectively apply holding that state welfare statute was unconstitutional and ordering retroactive benefits under the statute that existed before the unconstitutional amendments), *aff'd*, 504 N.W.2d 198, 200 (Minn.1993) (issue of retroactive benefits not subject of review).

## DECISION

That part of the district court's summary judgment denying Nevels additional foster care benefits while she and B.N. were eligible for AFDC was based on an error of law. The county and commissioner erroneously interpreted and applied the statute that governs Nevels' request for retroactive benefits.

On remand, the district court is directed to recalculate Nevels' request for benefits for the period in question.

**Affirmed in part, reversed in part, and remanded.**